

One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500
T 415 391 4800
coblentzlaw.com

Rees F. Morgan
D (415) 772-5754
rmorgan@coblentzlaw.com

June 28, 2024

**VIA ECF FILING**

The Hon. Natasha C. Merle, USDJ
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Doe v. DraftKings Inc.*; Case No. 1:24-cv-03077-NCM-VMS

Dear Judge Merle:

Pursuant to Local Rule 37.3, Defendant DraftKings Inc. ("DraftKings") submits this letter motion to request a short stay of discovery pending resolution of its motion to dismiss the Complaint. That motion will be fully briefed by August 8, 2024. Plaintiff is unwilling to agree to stay discovery and, moreover, served a first set of Requests for Production on May 21, 2024, despite DraftKings informally providing him with information in an effort to avoid formal discovery. Consequently, DraftKings respectfully requests that the Court order a short stay of discovery while the motion to dismiss is pending because it would promote an efficient and just resolution and Plaintiff will suffer no prejudice from a short stay.

**Procedural History**

On March 11, 2024, Plaintiff filed his Complaint in New York state court, County of Queens, which DraftKings removed to this Court on April 24, 2024. On May 1, 2024, DraftKings filed a letter motion summarizing the basis of its motion to dismiss. Plaintiff filed a response on May 8, 2024. On June 17, 2024, the Court granted a motion for extension of time, setting the briefing schedule for the motion to dismiss as follows: DraftKings' motion to dismiss due June 28, 2024, Plaintiff's opposition due July 29, 2024, and DraftKings' reply due August 8, 2024. The Court also ordered that if Plaintiff wishes to proceed by pseudonym, he must file a motion so requesting by June 28, 2024. Plaintiff has since informed DraftKings' that he will not be moving to proceed by pseudonym.

On May 8, 2024, the parties conferred regarding discovery. DraftKings stated that, in its view, discovery was premature until the motion to dismiss is resolved. DraftKings also offered, in good faith, to informally discuss with Plaintiff certain specific requests for information that he had noted. Despite this, Plaintiff disagreed that discovery should be stayed and served a first set of requests for production on May 21, 2024. The Parties met and conferred again on May 29, 2024, and DraftKings again requested that Plaintiff hold his document requests in abeyance until the motion to dismiss was resolved, but Plaintiff did not agree. DraftKings intends to comply with the Rules of Civil Procedure and provide its written responses and objections to Plaintiff's discovery by the parties' agreed-upon deadline of July 1, 2024, but does not intend to produce any documents.

Recently, Gadoon "Spanky" Kyrollos, who Plaintiff alleges was the individual to whom DraftKings disclosed Plaintiff's account information and who allegedly orchestrated the assault



on Plaintiff, publicly stated that he "never received any information from anyone at DraftKings about [Plaintiff];" "never threatened [Plaintiff] nor sent a 'masked man' to threaten him;" and "obviously do[es] not have the power" to receive information on payouts from Plaintiff's account.[1] These admissions from Mr. Kyrollos, if true, highlight that Plaintiff's Complaint is baseless and discovery is particularly inappropriate until the Court rules on DraftKings' motion to dismiss.

**Legal Argument**

Upon a showing of good cause, a court has "considerable discretion to stay discovery" pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. *Hong Leong Fin. Ltd. (Sing.) v. Pinnacle Performance Ltd*., 297 F.R.D. 69, 72 (S.D.N.Y. 2013). A pending motion to dismiss may constitute "good cause" for an order staying discovery. *Id*. A court determining whether to grant a stay of discovery pending a motion to dismiss must "look to the particular circumstances and posture of each case" and consider the following factors: (1) the breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion. *Id.*

1. Breadth of Discovery Sought

Among other bases, Plaintiff's overbroad and unduly burdensome discovery requests weigh in favor of granting a short discovery stay, particularly where all discovery will be obviated if DraftKings' motion to dismiss is granted. Plaintiff seeks overbroad discovery at this juncture, including all documents and communications concerning Plaintiff and his account, as well as DraftKings' internal practices and procedures, regardless of whether they are related to the allegations in his Complaint. Searching, inspecting and reviewing documents would require a substantial and unreasonable amount of time and expense, potentially requiring the disclosure of confidential and proprietary information.

Given that DraftKings' motion to dismiss, if successful, would dispose of all of Plaintiff's claims, the overbreadth and undue burden of Plaintiff's requests weighs in favor of granting a stay. *See, e.g., Rivera v. Heyman,* 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997) (where "disposition of the dismissal motion may significantly narrow, if not eliminate, the issues remaining in the case, proceeding with discovery while the motion is pending would waste the parties' resources and would constitute an undue burden on defendants."); *see also Hewlett Packard Enter. Co. v. Aqua Sys., Inc.*, 2024 WL 1159000, at *9 (E.D.N.Y. Mar. 18, 2024) (granting a discovery stay where "the parties could avoid substantial burden and waste of resources by staying discovery until the motion to dismiss has been decided"); *Johnson v. New York Univ. Sch. of Educ*., 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("[B]ecause the adjudication of the pending motion to dismiss may obviate the need for burdensome discovery, defendant's request for a stay of discovery is granted, until resolution of the motion to dismiss.").

2. Potential Resulting Prejudice

Plaintiff will suffer no prejudice from a short stay, whereas DraftKings will be substantially prejudiced without one. Plaintiff has not established that there are any time-sensitive factual issues that need to be explored immediately, or otherwise identified any specific reason why he

[1] *See* Exhibit A, Twitter post by Mr. Kyrollos dated June 25, 2024 *available at* https://x.com/spanky/status/1805761061062107165?s=42&t=UtbSjaS_2JzT1gnJKmA_Pw and https://x.com/spanky/status/1805761064337854500?s=42&t=UtbSjaS_2JzT1gnJKmA_Pw.

would suffer prejudice from a short stay. The alleged actions at the core of his Complaint occurred over a year ago, and there is no alleged ongoing harm requiring immediate discovery. Moreover, the motion to dismiss briefing will be completed by August 8, 2024 – within the next month and a half. "At *this* stage of the litigation, with the viability of the new Complaint unresolved, a delay in discovery, without more, does not amount to unfair prejudice" to Plaintiff. *Broccoli v. Ashworth*, 2023 WL 6795253, at *2 (S.D.N.Y. Oct. 11, 2023) (internal quotation omitted); *Elnenaey v. JP Morgan Chase Bank, N.A.*, No. 20 CV 5430 (DG)(LB), 2021 WL 7908626, at *1 (E.D.N.Y. Oct. 7, 2021) ("At this early stage, a limited stay will not prejudice plaintiff and will avoid unnecessary discovery costs."); *Hewlett Packard Enter. Co*, 2024 WL 1159000, at *10 (E.D.N.Y. Mar. 18, 2024) (finding "the passage of time here is not a good reason to stay discovery" where the stay of a few months "will be relatively short").

Conversely, DraftKings will be substantially prejudiced if a stay is not granted. If the motion to dismiss is granted, the need for all discovery will be avoided. Absent a stay, however, DraftKings is required to *engage* in premature, expensive, and time consuming discovery, which all will have been for naught if the Court grants the motion to dismiss.

3. Strength of DraftKings' Motion to Dismiss

In examining the "strength of the motion," a stay of discovery is appropriate where a motion has substantial grounds and does not appear to be without foundation in law. *Hong Leong Fin. Ltd.,* 297 F.R.D. at 75; *see also Port Dock and Stone Corp. v. Oldcastle Ne., Inc*., 2006 WL 897996, at *2 (E.D.N.Y. Mar. 31, 2006) (staying discovery during pendency of motion to dismiss where "the defendants raise substantial issues with regard to the viability of plaintiffs' complaint . . . and defendants' arguments do not appear to be frivolous or unfounded"); *Little v. City of New York Dep't of Fin.*, No. 20-CV-1979 (RPK)(MMH), 2022 WL 3704214, at *3 (E.D.N.Y. Aug. 26, 2022) (granting motion to stay discovery during pendency of motion to dismiss where defendants demonstrated substantial arguments for dismissal).

As set forth in DraftKings' letter motion (ECF No. 6), there are strong arguments supporting dismissal of Plaintiff's complaint. Briefly, Plaintiff's far-fetched claims fail because, among other reasons: (i) DraftKings cannot be held vicariously liable for alleged torts of employees acting outside the scope of their employment; (ii) Plaintiff has not pled that DraftKings provided substantial assistance, a critical element of his aiding and abetting claims; (iii) Plaintiff has not pled extreme and outrageous conduct with respect to his claims for intentional or negligent infliction of emotional distress; and (iv) Plaintiff has failed to plead that DraftKings can be liable for negligence because it knew or should have known of the alleged and unnamed tortfeasor-employee's propensity for *the* misconduct which caused the injury.

If DraftKings' motion to dismiss is granted, it will dispose of all of Plaintiff's claims and no discovery will take place. *See Del Mar TIC I, LLC v. Bancorp Bank*, No. 1:23-CV-08999 (JLR), 2024 WL 1348501, at *1 (S.D.N.Y. Mar. 29, 2024) ("Because Defendant's success on the motion to dismiss would *dispose* of the entire action, this factor weighs in favor of granting the requested stay."). Due to the strength of DraftKings' arguments for dismissal, a short stay pending resolution of that motion best promotes judicial economy, conserves the parties' and the Court's time and resources, and promotes a fair and efficient course for this litigation.

Very truly yours,

Rees F. Morgan

# EXHIBIT A

 



Settings

Post

spanky
@spanky

My statement:
Let's address Mr. 'John Doe' aka Steve Jacobs (Yes, you read that right, the plaintiff and the plaintiff's attorney are the same person!)

Plaintiff / plaintiff's attorney Steve Jacobs is also a Senior Attorney who works at Herbert Smith Freehills Law Firm in New York City.

As background, my buddy Oscar Jones met Steve through a personal connection and was under the impression that Steve was a "whale" that we believed we could flip to get down.

In layman's terms, a "whale" is a losing player that can bet big on all of our behalf because the sportsbook, seeing his history of losing bets, has given him increased betting limits, hoping he will lose even more.

We would send Oscar the plays, Oscar would send them to Steve Jacobs and Steve Jacobs would then punch them in his account. (For those unaware of the betting landscape, I rely on guys like Steve Jacobs to bet, given DraftKings (DK) doesn't allow me to bet at their establishment because I win). Oscar even gave Steve $82,375 of his own money to get the partnership started.

After a few months, and with the benefit of our consultation (via Oscar), naturally Steve won a substantial amount of money.

Fast forward 2 months to when it's time to settle up the proceeds of our partnership. Slight problem – Steve claimed DK was holding up the payout. He claimed that DK was asking him to sign an "affidavit of eligibility". Oscar and I each advised him to file a complaint with the New York Gaming Board. Initially he refused, but we were insistent that he take up the matter with the regulatory authorities, and eventually he agreed to do that.

On February 6, 2023 at 8:33p Steve filed a complaint with NY Gaming via email and BCC'd Oscar on that email to "prove" he'd filed it.

For more than a month after that, Steve told us both that he had not yet received a response to the complaint he filed with regulators, and that he was still waiting with "fingers crossed".

Oscar and I both started to get suspicious.

My strategy of following up on my suspicion was a test for Steve Jacobs. I told him -- bluffing -- that I had the ability to receive information on the status of the payout from DK (I obviously do not have that power, nor am I connected with anyone who does have that power, given I am banned from betting at DK!). I wanted to gauge Steve's response to my bluff; in particular, I was hopeful that if he was doing something wrong, that this bluff might encourage him to fess up. Steve maintained that DK was holding up his withdrawal request, and that he was waiting on a response to a complaint he filed with the New York Gaming Board.

New to X?
Sign up now to get your own personalized timeline!
Sign up with Google
Sign up with Apple
Create account
By signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use.

## Relevant people

spanky
@spanky
Follow

Pro Sports Bettor. Host of @BeBetterBettors. Created @bet_bash @spankodds and @theSGHOF. Betting Partner inquiries - DM @ChineseMike2.

Something went wrong. Try reloading.

Retry

Terms of Service Privacy Policy Cookie Policy Accessibility Ads info More ...
© 2024 X Corp.

Don't miss what's happening
People on X are the first to know.
Log in

Sign up



Settings

Post

wanted to gauge Steve's response to my bluff; in particular, I was ... might encourage him to fess up. Steve maintained that DK was holding up his withdrawal request, and that he was waiting on a response to a complaint he filed with the New York Gaming Board.

Oscar then had a brilliant strategy for following up on our suspicion; he had the idea to use New York's Freedom of Information Law (FOIL) to request, from the regulators, copies of the complaint that Steve Jacobs said he had filed against DK. What comes next is crazy! What Steve Jacobs never admitted to us was literally 5 minutes after filing the complaint, he sent them a second email at 8:38 pm on February 6, 2023 saying that the complaint he "filed" in his first email was an "accident". 5 minutes!

In his "accident" letter, he apologized - saying he was a "gaming lawyer and drafted it for a gaming training module". Both the complaint and cancellation can be seen attached below and can be freely obtained via FOIL.

I believe one of three things happened: Either 1) Steve Jacobs wound up stealing the money, or (2) he gambled it all away or (3) he just booked our bets himself (instead of placing the bets at DK) - hoping we would lose.

The evidence seems to show that Steve Jacobs is either a sick compulsive gambler or a thief. My bet is on both. Either way he needs help.

I wound up talking to Steve Jacobs and he admitted to me that he owes over a million dollars ($1,000,000.00) to other people. He has a reputation in the poker community of being unhinged (forumserver.twoplustwo.com/showpost.php?p… )
(1/2)

- I, [redacted], requested a withdrawal from my DK (DraftKings) account in the amount of $200,000 on January 2, 2023
- On January 9th, I received a call from a DK representative (hereinafter referred to as "my host", "DK host", "VIP host", and/or "host")
- My host asked me if I wished to cancel my withdrawal.
- I declined to cancel my withdrawal.
- My host then asked if me I was "sure" ("are you sure?")

Since then, DraftKings has been holding my money hostage.

- At the beginning of week 2, they said they would send me a list of documents they wanted me to submit.
- Near the end of week 2, I still had not received said list.
- At the beginning of week 3, they finally sent me the list of documents they wanted me to submit.
- I submitted the requested documents the same day I received the request for them.
- At that point in time, I was still able to bet, and continued to do so.
- Near the end of week 3 — Thursday January 19, 2023 — I won $93,500 — the most I'd ever won on my account in a single day.
- That same day, DK disabled my account. When I try to log in, I get an error message that says, "We've disabled your account for your security".
- My account is still disabled. I cannot sign in to check my balance or request additional withdrawals.
- At the end of week 3, they were still "reviewing" the documents I had submitted nearly a week earlier.
- My host assured me that the review was almost finished, and that I would have an update no later than Monday (the beginning of week 4).
- At the end of week 4, I still had not received payment.
- On the first Monday of week 5 (January 30), they sent me an "affidavit of eligibility" and asked for my signature.
- I don't think it's necessary for me to sign any affidavit to receive my money.

Please instruct Draftkings to reactivate my account and send my funds ASAP.

Subject:
Date:
Attachments: [redacted]

You don't often get email from [redacted] Learn why this is important

Dear Gaming Commission,

With sincere apologies, the email/attachment below was accidental, and was not meant to be sent to you. I am a gaming lawyer and I drafted it for a gaming training module. It is not a real complaint. I meant to include your email address in the document but not to send it to you. Please ignore and delete the email and attachment. I apologize again.

Best,
[redacted]

---------- Forwarded message ---------
From: [redacted]
Date: Mon, Feb 6, 2023 at 8:33 PM
Subject: Gaming Complaint
To: <info@gaming.ny.gov>

Dear Whom it may Concern,

12:32 AM · Jun 26, 2024 · **63.9K** Views

**23** Reposts **22** Quotes **193** Likes **55** Bookmarks

55

## New to X?

Sign up now to get your own personalized timeline!

Sign up with Google

Sign up with Apple

Create account

By signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use.

## Relevant people

**spanky** @spanky Follow

Pro Sports Bettor. Host of @BeBetterBettors. Created @bet_bash @spankodds and @theSGHOF. Betting Partner inquiries - DM @ChineseMike2.

Something went wrong. Try reloading.

Retry

Terms of Service Privacy Policy Cookie Policy Accessibility Ads info More ···
© 2024 X Corp.

**Don't miss what's happening**
People on X are the first to know.

Log in Sign up

Settings

**spanky** @spanky

Although he never told me what happened with our winnings, which were supposedly being withheld after he tried to withdraw them in January of 2023, he did manage to, in March of 2023, settle another lawsuit against him, by paying plaintiff Jonathan Bronson $270,814. Steve Jacobs is involved in several lawsuits for hundreds of thousands of dollars, on both sides (but especially on the Defendant side), as John Doe in many of them. You've all heard of robbing Peter to pay Paul; this guy robbed Spanky to pay Johnny.

What a mess.

Steve Jacobs is now seeking compensation by way of a frivolous lawsuit against DraftKings - to either pay off other debts or to keep gambling. He claims this incident happened in March 2023 but yet he waited till June 2024 to file a suit? 15 months! Did he run out of money to feed his gambling habit?

I never threatened Steve nor sent a “masked man” to threaten him; however, given that Steve Jacobs owes over a million dollars ($1,000,000.00) to so many people, his claims don’t surprise me.

I never received any information from anyone at DraftKings about Steve Jacobs. FOIL was all we needed to prove this guy to be a shyster.

Sorry Steve Jacobs, but “John Doe” ain’t gonna cut it this time. You wanna try and steal money from people to feed your gambling habit and then play the victim? You want to smear my name and Oscar’s name and DraftKings' name? All while remaining anonymous!?! You use your lawyer badge to tie up the court’s valuable time instead of seeking the help you desperately need. Steve Jacobs is a complete loser!

To @HSFlegal, you have a bad apple in your midst. Can you expect him to represent your clients while his mind is preoccupied with whether the Yankees will win by at least 2 runs or how he will find funds to feed his gambling habit?His behavior seems to be that of a professional con artist.

To my fellow bettors out there: there is a lesson to be learned here; be careful of who you deal with. Do your due diligence. Be wary of being too trusting based on appearances, because this case teaches us that even people who appear like they should be highly credible and highly trustworthy (e.g. Steve Jacobs, a high powered officer of the court /New York attorney for Herbert Smith Freehills) can turn out to be a con-man, a liar, and a thief.

Like I’ve always said, as a professional sports bettor, winning is just the beginning. Scum like this are everywhere you look. You do your best to try and avoid them but they always seep through.

Thanks for reading 🙏 (2/2)

12:32 AM · Jun 26, 2024 · **17.3K** Views

**New to X?**

Sign up now to get your own personalized timeline!

Sign up with Google

Sign up with Apple

Create account

By signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use.

**Relevant people**

**spanky** @spanky Follow

Pro Sports Bettor. Host of @BeBetterBettors. Created @bet_bash @spankodds and @theSGHOF. Betting Partner inquiries - DM @ChineseMike2.

Something went wrong. Try reloading.

Terms of Service Privacy Policy Cookie Policy Accessibility Ads info More ···

© 2024 X Corp.

**Don’t miss what’s happening**
People on X are the first to know.

Log in Sign up

Document title: spanky on X: "Although he never told me what happened with our winnings, which were supposedly being withheld after he tried to withdraw them i…
Capture URL: https://x.com/spanky/status/1805761064337854500?s=42
Capture timestamp (UTC): Wed, 26 Jun 2024 01:51:08 GMT

Page 1 of 2