# Coblentz
# Patch Duffy
# & Bass LLP

One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500

T 415 391 4800

coblentzlaw.com

Rees F. Morgan
D (415) 772-5754
rmorgan@coblentzlaw.com

July 15, 2024

**VIA ECF FILING**

The Hon. Natasha C. Merle, USDJ
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Doe v. DraftKings Inc.*; Case No. 1:24-cv-03077-NCM-VMS

Dear Judge Merle:

We are counsel for Defendant DraftKings Inc. ("DraftKings").  On June 28, 2024, DraftKings served its Motion to Dismiss Plaintiff's original complaint, but pursuant to Your Honor's Individual Rules of Practice, we have not yet filed it on the ECF system.

On June 28, 2024, DraftKings filed a letter motion to stay discovery [ECF No. 16] pending resolution of the dismissal motion.  Both the letter motion to stay and Plaintiff's recently-filed opposition thereto, discussed the issues addressed in the Motion to Dismiss.  Accordingly, we attach hereto a copy of DraftKings' Motion to Dismiss in case it may assist the Court's evaluation of that letter motion to stay discovery.

Furthermore, on July 3, 2024, the Court ordered that Plaintiff must file an amended version of his complaint, after Plaintiff informed the Court that he did not wish to proceed by pseudonym. [ECF No. 18].  Plaintiff did so on July 5, 2024. [ECF No. 20].  DraftKings respectfully requests the Court's clarification on whether the pending dismissal motion will be deemed applicable to the amended complaint or whether DraftKings should re-serve its Motion to Dismiss and, if so, the deadline for doing so.

Very truly yours,

Rees F. Morgan

RFM:fls

CC:  Steven Jacobs, via ECF
      James Sandnes, via ECF

Enclosure

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN DOE,<br><br>  Plaintiff,<br><br>  v.<br><br>DRAFTKINGS INC.,<br><br>  Defendant. | Civil Action No.:  1:24-cv-03077-NCM-VMS |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................................1

FACTUAL ALLEGATIONS ............................................................................................3

LEGAL STANDARD........................................................................................................5

ARGUMENT ....................................................................................................................6

    I.    The First Three Causes of Action Must Be Dismissed Because DraftKings Is Not Vicariously Liable For Alleged Torts Of Employees Who Are Not Acting Within The Scope Of Their Employment. ....................................................6

    II.    The Complaint Fails To State A Claim For Aiding And Abetting Because Plaintiff Pled No Facts To Establish Substantial Assistance. ...............................10

    III.    The Complaint Fails To State A Claim For Intentional Infliction Of Emotional Distress. .......................................................................................12

        A.    Plaintiff Has Not Pled Actions By DraftKings That Meet The Standard For Extreme And Outrageous Conduct. ....................................13

        B.    Plaintiff Failed To Plead Facts Supporting DraftKings' Intent To Cause, Or Disregard Of Substantial Likelihood Of Causing, Severe Emotional Distress. ....................................................................14

        C.    Plaintiff's IIED Claim Is Duplicative Of His Other Claims.....................14

    IV.    The Complaint Fails To State A Claim Under Both Negligence Theories............15

        A.    Plaintiff Fails to State A Claim For Negligence or Negligent Supervision and Retention. .......................................................................15

        B.    Plaintiff Fails to State A Claim For Negligent Infliction Of Emotional Distress. .......................................................................18

CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................................3, 6, 10, 15

*Banque Worms v. Luis A. Duque Pena E Hijos, Ltda.*,
 652 F. Supp. 770 (S.D.N.Y. 1986) ...................................................................9

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..........................................................................................6

*Benacquista v. Spratt*,
 217 F. Supp. 3d 588 (N.D.N.Y. 2016).............................................................14

*Bigio v. Coca-Cola Co.*,
 675 F.3d 163 (2d Cir. 2012).............................................................................11

*Conboy v. AT&T Corp.*,
 84 F. Supp. 2d 492 (S.D.N.Y. 2000), *aff'd*, 241 F.3d 242 (2d Cir. 2001) ...............................13

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
 671 F. Supp. 3d 387 (S.D.N.Y. 2023)....................................................11, 13, 15

*Doe 7015 v. Elektra Ent. Grp. Inc.*,
 2023 WL 2744102 (S.D.N.Y. Mar. 31, 2023) ......................................11, 12, 16, 17

*Doe v. Alsaud*,
 12 F. Supp. 3d 674 (S.D.N.Y. 2014)......................................................7, 10, 16, 17

*Doe v. Guthrie Clinic, Ltd.*,
 No. 11-CV-6089T, 2012 WL 531026 (W.D.N.Y. Feb. 17, 2012), *aff'd in part*,
 519 F. App'x 719 (2d Cir. 2013), *aff'd*, 740 F.3d 864 (2d Cir. 2014)...........................8, 13, 18

*Doe v. Poly Prep Country Day Sch.*,
 No. 20-CV-04718 (DG) (PK), 2022 WL 4586237 (E.D.N.Y. Sept. 29, 2022) ......................14

*Elliott-Lewis v. Laboratories*,
 378 F. Supp. 3d 67 (D. Mass. 2019) ................................................................14

*Goldstein v. United States*,
 14 F. App'x 115 (2d Cir. 2001) ........................................................................9

*Gottlieb v. Sullivan & Cromwell*,
 609 N.Y.S.2d 344 (1994)..................................................................................9

*Herskovitz v. Equinox Holdings, Inc.*,
   No. 151065/2013, 2013 WL 2642956 (N.Y. Sup. Ct. June 03, 2013)..............................16, 17

*Kajoshaj v. New York City Dep't of Educ.*,
   543 F. App'x 11 (2d Cir. 2013) .........................................................................................6

*Kiser v. HSH Nordbank AG*,
   No. 09 CIV. 8849(JSR), 2010 WL 286647 (S.D.N.Y. Jan. 20, 2010)....................................13

*Marcus v. Leviton Mfg. Co.*,
   661 F. App'x 29 (2d Cir. 2016) .........................................................................................6

*Milosevic v. O'Donnell*,
   934 N.Y.S.2d 375 628, 629 (N.Y. Sup. Ct. Nov. 29, 2011) ..................................................16

*Naegele v. Archdiocese of N.Y.*,
   833 N.Y.S.2d 79 (2007)....................................................................................................8

*National Westminster Bank USA v. Weksel*,
   511 N.Y.S.2d 626 (1987) ............................................................................................11, 12

*Naughright v. Robbins*,
   No. 10 CIV. 8451, 2014 WL 5315007 (S.D.N.Y. Oct. 17, 2014) ...........................................16

*Naughright v. Weiss*,
   826 F. Supp. 2d 676 (S.D.N.Y. 2011)................................................................................11

*Poppel v. Estate of Archibald*,
   No. 1:19-CV-01403 (ALC), 2020 WL 2749719 (S.D.N.Y. May 27, 2020)..............................7

*Roe v. Domestic & Foreign Missionary Soc'y of the Protestant Episcopal Church*,
   155 N.Y.S.3d 418 (2021)................................................................................................13

*Ross v. Mitsui Fudosan, Inc.*,
   2 F. Supp. 2d 522 (S.D.N.Y. 1998) ..................................................................................18

*Salmon v. Blesser*,
   802 F.3d 249 (2d Cir. 2015)............................................................................................15

*Samuel, et al., v. The Rockefeller Univ.*,
   No. 950540/2020, 2022 WL 2916784 (N.Y. Sup. Ct. July 25, 2022) ....................................15

*Sgaliordich v. Lloyd's Asset Mgmt.*,
   No. 1:10-CV-03669 (ERK), 2011 WL 441705 (E.D.N.Y. Feb. 8, 2011)................................7

*Slue v. New York Univ. Med. Ctr.*,
   409 F. Supp. 2d 349 (S.D.N.Y. 2006)...............................................................................14

*Spielman v. Carrino*,
    910 N.Y.S. 2d 105 (2010) ..........................................................................................8

*Toomer v. Cellco P'ship*,
    No. 11 CIV. 7515(PAE), 2012 WL 2953831 (S.D.N.Y. July 20, 2012) ................................17

*Truman v. Brown*,
    434 F. Supp. 3d 100 (S.D.N.Y. 2020) ..........................................................................18

*Turkmen v. Ashcroft*,
    589 F.3d 542 (2d Cir. 2009) ......................................................................................6

*Velasquez–Spillers v. Infinity Broadcasting Corp.*,
    857 N.Y.S.2d 107 (2008) ..........................................................................................10

*Wolkstein v. Morgenstern*,
    713 N.Y.S.2d 171 (2000) ..........................................................................................15

*Yamashita v. Scholastic Inc.*,
    936 F.3d 98 (2d Cir. 2019) ........................................................................................6

## INTRODUCTION

Plaintiff John Doe's ("Plaintiff") Complaint (the "Complaint") tells a nonsensical, fabricated story wherein Defendant DraftKings Inc. ("DraftKings") allegedly collaborated with violent criminals to enable an assault against him.  This story is utterly false.  However, even accepting Plaintiff's far-fetched allegations as true for purposes of this motion to dismiss (the "Motion"), he fails to state any claim upon which relief can be granted.  Plaintiff alleges that around March 2023, unidentified employees at DraftKings provided Plaintiff's personal information to Gadoon Kyrollos (apparently known as "Spanky") and his "associate" Oscar Jones.  These individuals – who are not employed by or affiliated with DraftKings, nor parties to this lawsuit despite their alleged actions – then allegedly used the improperly disclosed information to send someone who "grab[bed]" and "twisted Plaintiff's arm" on a subway platform, demanded that Plaintiff repay money he owed Mr. Kyrollos, and purportedly said that Plaintiff "did not want to know" what the assailant would do if he "had to come back."

Plaintiff also alleges that approximately seven months later, those same unidentified employees at DraftKings helped Mr. Kyrollos change the email address associated with Plaintiff's DraftKings account, the second and last event in an alleged "year-long [] campaign of harassment[.]"  Plaintiff fails to adequately state any cause of action based on the implausible allegations in his Complaint.

Plaintiff's first three causes of action, for aiding and abetting assault, aiding and abetting battery, and intentional infliction of emotional distress, fail for the threshold reason that, even if the allegations underlying those claims are true (and they are not), DraftKings cannot be held vicariously liable for torts of employees acting outside the scope of their employment.  Plaintiff does not plead any facts plausibly showing that any alleged unauthorized disclosure of Plaintiff's information fell within the scope of employment or to further DraftKings' interests.  To the

contrary, DraftKings employees are required to use reasonable measures to *protect* customers' personal information – not disclose it. Plaintiff himself alleges that it would be "patently improper" and violate the law for a DraftKings employee to provide Mr. Kyrollos with Plaintiff's personal information, which all but admits that such purported action is outside the scope of employment.  Plaintiff's claims against DraftKings for aiding and abetting assault, aiding and abetting battery, and intentional infliction of emotional distress must be dismissed on this basis alone.

Plaintiff's intentional tort claims are defective for a variety of other reasons.  With regard to Plaintiff's aiding and abetting claims, he does not plead, as he must, facts showing that DraftKings provided substantial assistance by divulging Plaintiff's information to Mr. Kyrollos or related non-parties[1] with the deliberate intent of aiding in the assault or battery.

As for Plaintiff's claim of intentional infliction of emotional distress, Plaintiff fails to plead the required elements of intent and causation.  No facts in the Complaint suggest that DraftKings acted out of a malevolent desire to hurt Plaintiff, nor is there any plausible reason why DraftKings would do so.  The Complaint does not allege any connection between DraftKings and the persons responsible for the harms Plaintiff allegedly suffered.  And courts have rejected claims that an employee's unauthorized disclosure of personal information can constitute "extreme and outrageous" conduct beyond "all possible bounds of decency" attributable to the employer, so any resultant harm is not traceable to DraftKings.

Finally, Plaintiff's negligent supervision and retention claim also fails.  Even accepting the allegation that an unnamed DraftKings employee divulged Plaintiff's personal information

---

[1] To date, Plaintiff has not named the individuals that were directly responsible for the alleged tortious conduct that purportedly gave rise to his injuries; only DraftKings is a named party to this lawsuit.

and/or aided in changing the registered email address on his account, Plaintiff has not pled, as required, that DraftKings knew or should have known of the employee's propensity for the conduct which caused the injury.

The Complaint should be dismissed.

## FACTUAL ALLEGATIONS[2]

In or around January 2022, Plaintiff began to use the DraftKings Sportsbook platform. (Compl. ¶¶ 17-19).  During that year, Plaintiff developed a "friendship" with his VIP host, and attended "DraftKings VIP events such as basketball and hockey games in DraftKings' suite at Madison Square Garden[.]"  (Compl. ¶¶ 18-19).

In or around February 2023, Plaintiff alleges that Mr. Kyrollos, a purportedly "prominent sports gambler" known as "Spanky," began claiming that Plaintiff owed him hundreds of thousands of dollars.  (Compl. ¶¶ 2, 20).  On or around February 28, 2023, Plaintiff alleges that Mr. Kyrollos told Plaintiff that he "had acquaintances in the 'upper echelon' of DraftKings," and that he was going to attend a conference in Boston, Massachusetts where DraftKings "would provide him any and all information he requested regarding Plaintiff's account." (Compl. ¶ 23). Plaintiff reported the contents of this alleged discussion to his DraftKings VIP host, who allegedly informed Plaintiff that DraftKings had placed enhanced security on Plaintiff's account. (Compl. ¶ 29).[3]

---

[2] For purposes of this motion only, DraftKings accepts, as it must, the Complaint's factual allegations as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Although Plaintiff cites his home address as one example of information related to his account that Messrs. Kyrollos and Jones supposedly solicited and obtained from DraftKings, Plaintiff already had disclosed his address repeatedly in publicly available documents on the New York State Court "e-Courts" website, and further disclosed it later in connection with a lawsuit involving Mr. Jones himself.  *See* Affidavit of Franklin S. Krbechek In Support of Request for Judicial Notice ("Krbechek Aff."), Ex. D (Plaintiff's February 10, 2023 disclosure); Ex. E (Plaintiff's January 11, 2023 disclosure); Ex. C (Plaintiff's April 24, 2023 disclosure in lawsuit

In late March 2023, Mr. Kyrollos' "associate" Oscar Jones contacted Plaintiff and "made it abundantly clear in emails and text messages that he and [Mr. Kyrollos] had received Plaintiff's personal and financial information from DraftKings[.]" (Compl. ¶ 31). Although these alleged emails and text messages comprise the factual foundation for his Complaint, Plaintiff did not attach any of those documents to the pleading, nor did he elaborate on what exactly those emails and text messages stated which supports his assumption. Plaintiff alleges Messrs. Kyrollos and Jones then provided this information, including Plaintiff's address, to a "thug," who "grab[bed,]" "twisted Plaintiff's arm," and "spun Plaintiff around" on a subway platform. (Compl. ¶¶ 32, 67). The assailant also purportedly said that Plaintiff "had to pay the money that he 'owed'" and that Plaintiff "did not want to know what [the man] would do . . . if [the man] had to come back." (Compl. ¶ 33). Plaintiff interpreted this as a death threat. (Compl. ¶ 34). Plaintiff alleges that he reported the encounter to his DraftKings VIP host, who refused to provide information to Plaintiff regarding the alleged disclosure. (Compl. ¶¶ 35, 36). Plaintiff alleges he has suffered emotional distress as a result of the attack. (Compl. ¶ 39).[4]

Despite the alleged assault, DraftKings' supposed involvement with it, and Plaintiff's allegation that his "life has not been the same" including that he "is terrified whenever there is a knock on the door or a phone ringing," Plaintiff continued to use the DraftKings platform regularly and access benefits available to him as a VIP. (Compl. ¶ 39). Plaintiff claims that he

---

against Mr. Jones). While these publicly filed documents reveal Plaintiff's name, Plaintiff informed counsel for DraftKings on June 26, 2024 that he will not be moving to proceed by pseudonym in this action.

[4] Mr. Jones sued Plaintiff in April 2023 – after the alleged assault – alleging that Plaintiff used "false pretenses to obtain and wrongfully withhold $445,071.59 . . ." from Mr. Jones. (Krbechek Aff., Ex. F (the "State Court Complaint") at ¶ 7). That complaint was based on allegations that Mr. Jones and Plaintiff had formed a "partnership" where Mr. Jones "sent no less than $82,375 to [Plaintiff who] said he'd use that money to fund a DraftKings ('DK') sportsbook account[.]" (*Id.* at ¶ 10).

could not access his DraftKings' account on October 2, 2023, which DraftKings support informed him was because the site received a request to change his email address, a request Plaintiff claims he did not initiate.  (Compl. ¶ 44).  He alleges that "the upper echelon of DraftKings assisted" Mr. Kyrollos or "someone working with" him to "hack" Plaintiff's DraftKings account on that day.  (Compl. ¶ 67).  Plaintiff does not allege that any transactions occurred on his account, that any bets were placed, or that any account funds were moved during the time that Plaintiff was unable to access his account due to this alleged "hack."  *Id.*

Plaintiff never identifies who at DraftKings allegedly leaked Plaintiff's information to Mr. Kyrollos or helped "hack" Plaintiff's account.  He alleges only that those actions were taken by an unidentified person or persons in the "upper echelon" of DraftKings.  (Compl. ¶¶ 6, 38, 67, 68, 100).  Indeed, many of Plaintiff's key allegations are pled solely on "information and belief." These include his claims that "DraftKings provided [Mr. Kyrollos] and/or others with Plaintiff's private account information;" "DraftKings intentionally assisted a hacker in taking control of Plaintiff's DraftKings account;" and "DraftKings' employees that divulged information to [Mr. Kyrollos], Jones, and/or others, or that aided and abetted the Death Threat and the hack against Plaintiff in any way, were acting within the scope of their employment at DraftKings."  (Compl. ¶¶ 35, 49, and 69).

## <u>LEGAL STANDARD</u>

DraftKings moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  However,

the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. (citing *Twombly*, 550 U.S. at 555).

In addition, plaintiffs cannot rely on "information and belief" to save their complaints without the "good-faith basis in fact" necessary to render their allegations plausible. *Kajoshaj v. New York City Dep't of Educ.,* 543 F. App'x 11, 16 (2d Cir. 2013). Instead, they must "marshal more than unsubstantiated suspicions" to survive a motion to dismiss. *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 107 (2d Cir. 2019); *see also Marcus v. Leviton Mfg. Co.,* 661 F. App'x 29, 33 (2d Cir. 2016) (finding that claim failed under *Iqbal* as "conclusory and speculative" where key allegations were pled on information and belief); *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) ("*Twombly* and *Iqbal* require a heightened pleading standard in those contexts where factual amplification is needed to render a claim plausible.") (citation omitted).

## ARGUMENT

### I.  The First Three Causes of Action Must Be Dismissed Because DraftKings Is Not Vicariously Liable For Alleged Torts Of Employees Who Are Not Acting Within The Scope Of Their Employment.

Plaintiff fails to state facts sufficient to establish a facially-plausible claim that DraftKings is vicariously liable via respondeat superior for the alleged tortious acts of an unidentified employee (or employees) who allegedly divulged Plaintiff's account information and allowed "Spanky" to change Plaintiff's registered email address. Plaintiff's claims for (i) aiding and abetting assault; (ii) aiding and abetting battery; and (iii) intentional infliction of emotional distress must all be dismissed, because even if Plaintiff's allegations were true – and they are not – the employee(s) would have acted well outside the scope of their employment with DraftKings.

"It is black letter law that respondeat superior only holds an employer to answer for the [tortious] acts of an employee performed *within the scope of the employment.*" *Sgaliordich v.*

*Lloyd's Asset Mgmt.*, No. 1:10-CV-03669 (ERK), 2011 WL 441705, at *3 (E.D.N.Y. Feb. 8, 2011) (employer not vicariously liable for alleged fraudulent misstatements by employees) (emphasis in original and citation omitted).  When evaluating whether an employee acted within his or her scope of employment, courts consider, among other factors, "whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Id.*  To state a claim under respondeat superior, a plaintiff must also plead facts showing that the tortious conduct causing the injury was in furtherance of the employer's interests.  *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014).

Courts do not hesitate to dismiss vicarious liability claims where, as here, the plaintiff has not pled that the tortious conduct was within the scope of the employee's duties.  *See, e.g.*, *Poppel v. Estate of Archibald*, No. 1:19-CV-01403 (ALC), 2020 WL 2749719, at *1, *5–6 (S.D.N.Y. May 27, 2020) (granting motion to dismiss because employee doctor was not acting within the scope of his employment when he abused patients); *Alsaud*, 12 F. Supp. 3d at 677–80 (victim of assault failed to state claim against perpetrator's employer absent allegation that the assault furthered employer's business interests or was part of any job responsibilities); *Doe v. Guthrie Clinic, Ltd.*, No. 11-CV-6089T, 2012 WL 531026, at *6 (W.D.N.Y. Feb. 17, 2012), *aff'd in part*, 519 F. App'x 719 (2d Cir. 2013), *aff'd*, 740 F.3d 864 (2d Cir. 2014) (medical clinic not liable for disclosure of patient's medical information by an employee); *Naegele v. Archdiocese of N.Y.*, 833 N.Y.S.2d 79, 80 (2007) (archdiocese not liable for pastor's alleged exercise of undue influence over elderly parishioner); *Spielman v. Carrino*, 910 N.Y.S. 2d 105, 107 (2010) (church not vicariously liable for alleged intentional infliction of emotional distress due to pastor's affairs with congregants).

Plaintiff has not plausibly alleged any *facts* to establish that the unknown DraftKings employee(s) who allegedly shared Plaintiff's personal information with Mr. Kyrollos and/or helped change his registered email address were acting within the scope of their employment. In fact, DraftKings' Privacy Notice is publicly available on its website, and which all customers, including Plaintiff, are required to review and accept as a condition of using DraftKings' services – demonstrates the opposite: that DraftKings and its employees must use reasonable efforts to *protect* Plaintiff's information.[5]  Section 6 of DraftKings' Privacy Notice explains that DraftKings is required to "use reasonable administrative, technical, and physical procedures, practices, and safeguards designed to protect personal information we collect from unauthorized access, use, alteration, exfiltration, or destruction." (Krbechek Aff., Ex. A).  The Privacy Notice establishes that the alleged unauthorized disclosure of Plaintiff's account information was not within the employee's scope of employment because, among other things, such disclosure would contravene DraftKings' Privacy Notice, not be in service of it.  Indeed, Plaintiff recognizes as much, as he affirmatively alleges that the disclosure of his personal information would be "patently improper" and that DraftKings was legally required to keep it private.  (Compl. ¶¶ 24, 28).  Those allegations alone defeat his intentional tort claims because, as a matter of law, an employee's violation of the law cannot be a basis for vicarious liability.  *See e.g.*, *Goldstein v. United States*, 14 F. App'x 115, 116 (2d Cir. 2001) ("no evidence in the record to suggest that

---

[5] DraftKings has filed, concurrently with its Motion to Dismiss, a Request for Judicial Notice requesting that the Court take judicial notice of DraftKings' publicly available Privacy Notice under Federal Rule of Evidence 201.  DraftKings requests that the Court take judicial notice of two versions of the Privacy Notice (Krbechek Aff., Exs. A and B), both of which are publicly available: DraftKings' current Privacy Notice, which was last updated November 7, 2023 (at the time Plaintiff filed his Complaint), and a prior version that was effective as of December 30, 2022 (during the time Plaintiff alleges the underlying events occurred).  The relevant language discussed in this Motion is substantially the same in both versions of the Privacy Notice.

the defendants induced or otherwise approved of its employees committing the purported theft of [] medical records and, as such, the doctrine of respondeat superior is not applicable to impose liability on the defendants"); *Banque Worms v. Luis A. Duque Pena E Hijos, Ltda.*, 652 F. Supp. 770, 773 (S.D.N.Y. 1986); *Gottlieb v. Sullivan & Cromwell,* 609 N.Y.S.2d 344, 344–45 (1994). While an exception can exist where a plaintiff pleads specific facts indicating that the employer induced the employee to violate the law, Plaintiff pled no such facts.  Indeed, he pled the *opposite*.  He alleges that his host recognized that divulging his personal information would be improper and that the host told Plaintiff that DraftKings would implement heightened security to try to *prevent* any such disclosure, not *induce* it.  (Compl. ¶¶ 28-29).  He also has not alleged any possible benefit to DraftKings, or any explanation of how it would serve DraftKings' business purposes to induce an employee to violate its Privacy Notice for the purposes of facilitating an assault and battery against a VIP customer, or to give a third party access to his account.

Notwithstanding his acknowledgment that no basis for vicarious liability exists here, Plaintiff offers a conclusory allegation, "[u]pon information and belief," that "any and all of DraftKings' employees that divulged information to [Mr. Kyrollos], Jones, and/or others, or that aided and abetted the Death Threat and the hack against Plaintiff in any way, were acting within the scope of their employment at DraftKings."  (Compl. ¶ 69).  The Court should disregard this entirely conclusory allegation, which is an ultimate legal conclusion untethered to any factual allegation.  *See Ashcroft*, 556 U.S. at 664 (conclusory allegations are not entitled to be assumed true); *see also Velasquez–Spillers v. Infinity Broadcasting Corp.,* 857 N.Y.S.2d 107, 108 (2008) (rejecting "conclusory" allegations of vicarious liability against an employer); *Alsaud*, 12 F. Supp. 3d at 679–80 ("Noticeably absent from the FAC is any fact that could provide a basis from which to infer . . ." that employer's business involved facilitating the sexual abuse alleged).

Ultimately, Plaintiff pleads no facts supporting a reasonable inference that any DraftKings employee who allegedly (i) divulged Plaintiff's account information to Mr. Kyrollos and any persons associated with him or (ii) facilitated access to his DraftKings account acted within the scope of his or her employment or in furtherance of DraftKings' business.  He does not assert any allegations, at all, of what the offending employees' job duties were. He does not sufficiently allege that the "upper echelon" employees would have *access* to his personal information and/or the ability to assist in changing the email address associated with his account, beyond a conclusory statement to that effect from "Spanky."  Nor does he plead any fact from which a factfinder could plausibly infer that DraftKings' business and/or the job duties of any employee in the "upper echelon" involved unlawfully divulging customers' personal account information, especially under these circumstances where that information was purportedly used to promote physical attacks on DraftKings' customers.  Because such conduct would, on its face, work against the interests of any business, it is unclear how Plaintiff could ever make out such an allegation in this case.  Dismissal of Plaintiff's first three claims is therefore appropriate.

## II.       The Complaint Fails To State A Claim For Aiding And Abetting Because Plaintiff Pled No Facts To Establish Substantial Assistance.

In addition to the respondeat superior issues with Plaintiff's intentional tort claims, the Complaint fails to sufficiently plead all of the elements of the causes of action for aiding and abetting assault or battery.  Under New York law, the elements of a claim for aiding and abetting another tort are "(1) the existence of an underlying tort; (2) the defendant's knowledge of the underlying tort; and (3) that the defendant provided substantial assistance to advance the underlying tort's commission."  *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012) (citation, brackets, and internal quotation marks omitted); *Doe 7015 v. Elektra Ent. Grp. Inc.*,

2023 WL 2744102, at *3 (S.D.N.Y. Mar. 31, 2023). If necessary, DraftKings will demonstrate that Plaintiff can prove none of these elements, but here we focus on just the final element.

Plaintiff has not alleged facts showing that DraftKings substantially assisted Mr. Kyrollos' so-called "thug" with his alleged assault and battery of Plaintiff. "Substantial assistance" requires committing some overt act, either by words or conduct in furtherance of the assault or battery. It requires intentional or deliberate acts directed at causing harm that would rise to the level of actionable conduct in relation to the subject assault. *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 416 (S.D.N.Y. 2023); *see also Naughright v. Weiss*, 826 F. Supp. 2d 676, 691 (S.D.N.Y. 2011) (aiding and abetting an assault and battery requires "the defendant's knowing and substantial assistance in the principal violation") (citation omitted).

Here, Plaintiff pled no *facts* that implicate DraftKings in the alleged assault and battery. Instead, Plaintiff alleges that "[t]he man [who attacked him] identified [Mr. Kyrollos] and Jones as the people that had sent him[.]" (Compl. ¶ 33). Plaintiff pleads no facts to support that an employee at DraftKings divulged Plaintiff's information *with the deliberate intent of aiding in that assault and/or battery. See National Westminster Bank USA v. Weksel*, 511 N.Y.S.2d 626, 630 (1987) (explaining that allegations in support of a claim for aiding and abetting must show what the defendant "can be said to have done with the intention of advancing the [tort's] commission"). None of Plaintiff's allegations plausibly support the inference that DraftKings substantially assisted in the purported assault and/or battery. And again, Plaintiff alleges no facts establishing *why* DraftKings – as a company – would act with the intent to facilitate an assault and battery on one of its customers.

Plaintiff's failure to directly tie the disclosure of his address to DraftKings is especially problematic in light of the fact that Plaintiff repeatedly disclosed that information himself in

publicly available documents in January and February 2023, immediately preceding the alleged assault.  *See* First Amended Complaint, *Steven Jacobs v. Jonathan E. Bronson*, Index No. 653000/2022, NYSCEF Doc. No. 48 (N.Y. Sup. Ct. Jan. 11, 2023); Letter from S. Jacobs to Supreme Court, Index No. 653000/2022, NYSCEF Doc. No. 60 (N.Y. Sup. Ct. Feb. 10, 2023). The plausibility of Plaintiff's allegations also is undermined by Plaintiff's disclosure of his home address in a lawsuit *with Mr. Jones* just a few weeks *after* the alleged assault.  (Krbechek Aff., Ex. C at 2).  Plaintiff's aiding and abetting claims must be dismissed.  *See Doe 7015*, 2023 WL 2744102, at *4 (dismissing claim for aiding and abetting sexual assault where defendants did not intend their actions to aid the perpetrator in committing the assault); *Nat'l Westminster Bank USA*, 511 N.Y.S.2d at 630.

Plaintiff has not pled, and cannot plead, that DraftKings intentionally disclosed his personal information with the intent of facilitating an assault.  As a result, the aiding and abetting claims must be dismissed.

## III.     The Complaint Fails To State A Claim For Intentional Infliction Of Emotional Distress.

Again, in addition to failing to plead facts establishing vicarious liability, Plaintiff's allegations fall far short of the high standard for pleading a claim for intentional infliction of emotional distress ("IIED").  The elements of such a claim under New York law are:  "(1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress."  *Doe 1*, 671 F. Supp. 3d at 415.  (citation omitted).  The standard for extreme and outrageous conduct must "'go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Kiser v. HSH Nordbank AG,* No. 09 CIV. 8849(JSR), 2010 WL 286647, at *1 (S.D.N.Y. Jan. 20, 2010) (citation omitted).

"Satisfying [this standard] is difficult, even at the pleadings stage." *Conboy v. AT&T Corp.,* 84 F. Supp. 2d 492, 507 (S.D.N.Y. 2000), *aff'd,* 241 F.3d 242 (2d Cir. 2001).

### A.   Plaintiff Has Not Pled Actions By DraftKings That Meet The Standard For Extreme And Outrageous Conduct.

As with Plaintiff's respondeat superior claims, his allegations that DraftKings "divulged Plaintiff's private personal and financial information to [Mr. Kyrollos]" or "chang[ed] Plaintiff's registered DraftKings email address" (Compl. ¶¶ 89, 92) fall far short of alleging extreme and outrageous conduct because that conduct cannot be properly attributed to DraftKings.  Even if true, and even if the conduct was extreme and outrageous, the actions of a rogue employee cannot support a finding of extreme and outrageous behavior by the employer.[6]  *See Guthrie Clinic*, 2012 WL 531026, at *8 (dismissing IIED claim that was based on unauthorized disclosure of personal health information); *see also Elliott-Lewis v. Laboratories,* 378 F. Supp. 3d 67, 71 (D. Mass. 2019) (concluding that nothing in employee's complaint suggested that former employer's failure to protect her data was extreme and outrageous, and she failed to plausibly allege that conduct was an intentional act of intimidation and retaliation).[7]  For that reason alone, the claim must be dismissed.

---

[6] Without committing an underlying tortious act, DraftKings necessarily cannot have caused any harm to Plaintiff.  *Roe v. Domestic & Foreign Missionary Soc'y of the Protestant Episcopal Church,* 155 N.Y.S.3d 418, 422 (2021).

[7] Furthermore, "[t]hose few claims of [IIED] that have been upheld were supported by allegations detailing a longstanding campaign of deliberate, systematic, and malicious harassment of the plaintiff." *Benacquista v. Spratt,* 217 F. Supp. 3d 588, 606 (N.D.N.Y. 2016) (citation omitted).  Plaintiff only alleges two incidents of alleged disclosure – a far cry from anything approximating such a campaign.

**B.**     **Plaintiff Failed To Plead Facts Supporting DraftKings' Intent To Cause, Or Disregard Of Substantial Likelihood Of Causing, Severe Emotional Distress.**

Under New York law, the conduct alleged must be "intentionally directed at the plaintiff."  *See Doe v. Poly Prep Country Day Sch.*, No. 20-CV-04718 (DG) (PK), 2022 WL 4586237, at *13 (E.D.N.Y. Sept. 29, 2022) (citations omitted).  IIED is a "tort of malevolence," which requires the plaintiff to show "that the defendant acted out of a desire to hurt the plaintiff[.]"  *Slue v. New York Univ. Med. Ctr.,* 409 F. Supp. 2d 349, 372 (S.D.N.Y. 2006) (citations omitted).

Plaintiff has alleged no facts to suggest that DraftKings ever "acted out of a desire to hurt the plaintiff." *Id.*; *see also Benacquista,* 217 F. Supp. 3d at 606 (dismissing IIED claim when allegations "fail to indicate that [their] conduct . . . was undertaken with intent to cause, or at least disregard of a substantial probability of causing, severe emotional distress").  No factual allegations suggest some malice on the part of DraftKings towards Plaintiff, or any reason DraftKings may have had to conspire against him.  Indeed, any claim to the contrary is belied by the fact that Plaintiff remained a DraftKings customer after the alleged conduct.  Rather than plead facts, Plaintiff makes only a conclusory allegation that "DraftKings intended to cause Plaintiff severe emotional distress or consciously disregarded a substantial probability of causing Plaintiff severe emotional distress."  (Compl. ¶ 93).  This conclusory allegation, lacking any facts to support it, is insufficient as a matter of law.  *See Ashcroft*, 556 U.S. at 664.

**C.**     **Plaintiff's IIED Claim Is Duplicative Of His Other Claims.**

"Generally, a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort . . . causes of action."  *Wolkstein v. Morgenstern*, 713 N.Y.S.2d 171, 172 (2000); *see also Salmon v. Blesser,* 802 F.3d 249, 256 (2d Cir. 2015) (IIED "may be invoked only as a last resort, . . . to provide relief in those circumstances where traditional

theories of recovery do not," not where "the challenged conduct falls well within the ambit of other traditional tort liability") (citations omitted); *Doe 1*, 671 F. Supp. 3d at 415 (dismissing IIED claim as duplicative negligence claims ); *Samuel, et al., v. The Rockefeller Univ.*, No. 950540/2020, 2022 WL 2916784, at \*2 (N.Y. Sup. Ct. July 25, 2022) (same).  Plaintiff's IIED claim should be dismissed because it is duplicative of Plaintiff's defective aiding and abetting and negligence claims, because the claim in each instance is the same: that DraftKings took action with the intent of causing him harm through disclosing his personal information and letting a bad actor change the email address associated with his account.

**IV.**     **The Complaint Fails To State A Claim Under Both Negligence Theories.**

    Plaintiff's intentional tort claims fail for the reasons discussed above.  His negligence claims are fatally defective as well.

**A.**     **Plaintiff Fails to State A Claim For Negligence or Negligent Supervision and Retention.**

    In New York, "a claim for negligent hiring, supervision or retention, in addition to the standard elements of negligence, requires a plaintiff [to] show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels."  *Naughright v. Robbins*, No. 10 CIV. 8451, 2014 WL 5315007, at \*8 (S.D.N.Y. Oct. 17, 2014) (citation omitted).  A defendant's liability for negligent selection, instruction, or supervision "lies in his having placed the employee [or independent contractor] in a position to cause foreseeable harm."  *Doe 7015*, 2023 WL 2744102, at \*7 (citation omitted).  Claims for negligent supervision and retention under New York law require specific allegations

of the employee's past wrongdoing to provide a basis from which to infer the employer's knowledge. *Alsaud*, 12 F. Supp. 3d at 682.

Plaintiff did not plead that DraftKings knew or should have known of the employee's propensity for the conduct allegedly resulting in injury, nor that any such employee committed similar misconduct in the past.  Plaintiff alleges that "[a]s a result of Plaintiff's discussion with Di Chiaro prior to the Death Threat, DraftKings knew or reasonably should have known that its 'upper echelon' was intended to and had a propensity to improperly divulge Plaintiff's private account information . . . to [Mr. Kyrollos] and/or other hostile actors."  (Compl. ¶ 100).  But Plaintiff does not identify the DraftKings employee who allegedly shared this information, or even what positions encompass the vague "upper echelon."  It is therefore impossible to determine whether DraftKings was negligent in supervising or retaining the particular employee(s) and placing them in a position to cause prospective foreseeable harm.[8]  Nor has Plaintiff alleged that any DraftKings' employees had engaged in similar misconduct in the past, such that DraftKings should have known that the unidentified employee had a propensity for

---

[8] To the extent Plaintiff argues that he needs discovery to substantiate his threadbare pleadings, Plaintiff cannot circumvent his inability to identify any specific DraftKings employee by arguing that the identity of the individual(s) are within DraftKings' exclusive control.  *See Alsaud*, 12 F. Supp. 3d at 683 ("As with respondeat superior claims, courts dismiss negligent supervision and retention claims at the pleading stage, before discovery . . . ."); *Milosevic v. O'Donnell,* 934 N.Y.S.2d 375 628, 629 (N.Y. Sup. Ct. Nov. 29, 2011) ("Dismissal of the [negligent hiring] claims cannot be avoided by speculation as to what discovery might reveal."); *Herskovitz v. Equinox Holdings, Inc.*, No. 151065/2013, 2013 WL 2642956, at *4, *10 (N.Y. Sup. Ct. June 03, 2013) ("Plaintiff's alleged need for discovery, which may reveal evidence of the prior incidents or other facts necessary to sustain her claim for negligent hiring, is speculative as it is unsupported by the allegations in the complaint and plaintiff does not submit an affidavit. . . Plaintiff should not be permitted to engage in a speculative 'fishing expedition' to obtain hoped-for disclosure.")  (emphasis in original).

such misconduct.[9]  His claims for negligence and negligent supervision and retention should be

dismissed.  *See Alsaud*, 12 F. Supp. 3d at 682 (negligent supervision and retention claims require

allegations of specific prior misconduct by the particular employee to provide a basis from which

to infer the employer's knowledge) (citing cases); *Toomer v. Cellco P'ship*, No. 11 CIV.

7515(PAE), 2012 WL 2953831, at *10 (S.D.N.Y. July 20, 2012) (dismissing claim for negligent

hiring and retention); *Doe 7015*, 2023 WL 2744102, at *6 (same).  Plaintiff's allegations of such

an improper disclosure are even more implausible when considered in context.  Plaintiff does not

include any discussion of the soured business deal between himself and Oscar Jones that began

in October 2022, the basis of Mr. Jones seeking more than $400,000 from Plaintiff.  (Krbechek

Aff., Ex. F, State Court Complaint at ¶ 9).  And the information that Plaintiff claims led to the

assault – the fact that the assailant knew his address – was already publicly available by virtue of

Plaintiff's repeated disclosure of that information in separate lawsuits, so it was not information

exclusively available on his DraftKings' account.  Given this, it is an implausible inference that

Plaintiff was attacked because someone in the "upper echelon" of DraftKings leaked Plaintiff's

information.  The more plausible inference is that alleged assault resulted from Plaintiff's

disputes with Messrs. Kyrollos and Jones, who already had access to Plaintiff's home address.

Finally, like all his other conclusory allegations, Plaintiff's threadbare claim that

DraftKings "should have known" of an unidentified class of employees' propensity to

improperly divulge information is insufficient.  *See Ross v. Mitsui Fudosan, Inc.,* 2 F. Supp. 2d

522, 532–33 (S.D.N.Y. 1998) ("Conclusory allegations of negligent supervision are insufficient

to overcome a motion to dismiss") (citation omitted); *Guthrie Clinic*, 2012 WL 531026, at *7

---

[9] Though unclear, Plaintiff includes a passing reference to a supposed "internal coverup" of
DraftKings' "participation in the Death Threat."  (Compl. ¶ 102).  That vague and conclusory
assertion is not supported by any factual allegations and is properly ignored at this stage.

("[T]here is no credible, nonconclusory allegation that [the employer] knew or should have known that [employee] would breach her duty of confidentiality with respect to any patient's private health information.")

**B.**     **Plaintiff Fails to State A Claim For Negligent Infliction Of Emotional Distress.**

To state a claim for NIED under New York law, a plaintiff must allege "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020) (internal quotation marks and citation omitted). In addition, a plaintiff must plead "facts making out one of three theories: (1) a bystander theory, (2) a direct duty theory, or (3) a special circumstances theory." *Id.* at 122–23. For the reasons explained in Section III.A, *supra,* Plaintiff has not sufficiently alleged extreme and outrageous conduct, or causation.

## CONCLUSION

This lawsuit should not proceed. With respect to whatever dispute Plaintiff seems to have with Messrs. Kyrollos and Jones and their alleged assault on him in connection with that dispute, Plaintiff's allegations here are plainly insufficient and conclusory, and a baseless attempt to drag DraftKings into his purported personal troubles. Nothing in the Complaint raises the plausible inference that DraftKings had anything to do with that alleged conduct, particularly when Plaintiff himself publicly disclosed, in separate lawsuits before and after the alleged assault, all the information that would be needed to orchestrate such a purported attack. Even accepting the far-fetched claim that a DraftKings employee contravened DraftKings' Privacy Notice by improperly providing Plaintiff's personal information, both common sense and the law confirm that such conduct cannot be a basis for vicarious liability of the employer.

For the foregoing reasons, DraftKings respectfully requests that the Court dismiss the

Complaint in its entirety pursuant to Federal Rule of Procedure 12(b)(6).


Dated: June 28, 2024                     Respectfully submitted,


By:        /s/ *Rees F. Morgan*
           James T. Sandnes
           SKARZYNSKI MARICK & BLACK LLP
           One Battery Park Plaza, 32nd Floor
           New York, New York 10004
           Telephone:  212.820.7700
           Facsimile:  212.820.7740
           Email:  jsandnes@skarzynski.com

           Richard R. Patch, (*pro hac vice filed*)
           Rees F. Morgan, (*pro hac vice filed*)
           Emlyn Mandel, (*pro hac vice filed* )
           Franklin S. Krbechek, (*pro hac vice filed*)
           COBLENTZ PATCH DUFFY & BASS LLP
           One Montgomery Street, Suite 3000
           San Francisco, California 94104-5500
           Telephone:  415.391.4800
           Facsmile:  415.989.1663
           Email:     ef-rrp@cpdb.com
                      ef-rfm@cpdb.com
                      ef-erm@cpdb.com
                      ef-fsk@cpdb.com

           Counsel for Defendant
           DRAFTKINGS INC.

## CERTIFICATE OF SERVICE

I, Rees F. Morgan, an attorney for DraftKings Inc., hereby certify that on this 28th day of

June, 2024, a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF**

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** was served via email, on the

following:

Steven Jacobs
Attorney for Plaintiff
28-40 Jackson Ave., No. 26E
Long Island City, NY 11101
stevenbjacobs@gmail.com

*Attorney for Plaintiff John Doe*

/s/ *Rees F. Morgan*
Rees F. Morgan