IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN JACOBS,<br><br>        Plaintiff,<br><br> vs.<br><br>DRAFTKINGS INC.,<br><br>        Defendant. | Civil Action No.: 1:24-cv-03077-NCM-VMS |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR
LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTED COMPLAINT**

Plaintiff Steven Jacobs ("Jacobs" or "Plaintiff") respectfully submits this Reply in further support of Plaintiff's motion for leave to file a second amended and supplemented complaint (ECF No. 45, the "Motion"; ECF No. 46, the "Opening Brief" or "Br."; ECF No. 47, Ex. A, the "Proposed Complaint") in the above-captioned action against defendant DraftKings Inc. ("DraftKings" or "Defendant").[1]

## ARGUMENT

DraftKings' opposition brief (ECF No. 50, the "Opp." or "Opposition") argues that all three of Plaintiff's new claims in the Proposed Complaint for (i) breach of fiduciary duty; (ii) fraud; and (iii) violations of New York GBL § 349 are "futile" even though the Court already ruled that Plaintiff adequately pled a fiduciary relationship, and even though the Proposed Complaint sets out, in detail and with specificity, DraftKings' lies to Plaintiff. As set forth below, DraftKings' arguments are baseless, and the Court should permit Plaintiff leave to file the Proposed Complaint.

**I.     The Proposed Complaint States A Claim For Breach Of Fiduciary Duty.**

It is unclear how DraftKings can argue in good faith that the Proposed Complaint fails to state a claim for breach of fiduciary duty in light of the Court's previous order denying DraftKings' motion to dismiss.[2] (ECF No. 41, the "Order"). DraftKings' Opposition does not contest breach, causation, and damages—DraftKings argues only that Plaintiff failed to adequately plead a fiduciary relationship. (*See* Opp. at 5-8.) But the Court already considered and rejected DraftKings' argument in its Order, holding that "[a]t the pleading stage," the

---

[1]  Undefined capitalized term shall have the meaning ascribed in Plaintiff's Opening Brief.

[2]  Under New York law a breach of fiduciary duty claim requires (1) the existence of a fiduciary relationship; (2) misconduct by the defendant constituting a breach of that duty; and (3) damages caused by the breach. *EBC I, Inc. v. Goldman Sachs*, 5 N.Y.3d 11, 19-20 (2005)

1

allegations in the original complaint are "sufficient to support plaintiff's contention that defendant owed him a fiduciary duty." (Order at 12.) DraftKings' argument is thus in direct contravention to Judge Merle's Order and the "law of the case" doctrine.

"The law of the case doctrine provides that a decision on an issue made at one stage of a case becomes binding precedent to be followed in subsequent stages of the litigation." *Schmidt v. Stone*, 2018 U.S. Dist. LEXIS 15048, at *20 (E.D.N.Y. Jan. 29, 2018); *see also United States v. Rowe*, 2025 U.S. Dist. LEXIS 35817, at *18-19 (E.D.N.Y. Feb. 27, 2025) (Scanlon, J.) (declining to revisit a legal argument that was "raised before and rejected by the District Court" because "previous decisions are law of the case as to this legal argument.") "[T]he purpose of the law of the case doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Robinson v. Sanctuary Record Groups*, 826 F. Supp. 2d 570, 575 (S.D.N.Y. 2011) (internal quotations omitted).

As discussed above, DraftKings' arguments that the Proposed Complaint fails to allege a fiduciary relationship were already made and rejected in the Court's Order. (*Compare* Opp. at 6-7 *with* Order at 11-12 (holding that Plaintiff adequately pled a fiduciary relationship).) Thus, DraftKings' claim that Plaintiff's allegations "cannot support the existence of a fiduciary duty" "[a]s a matter of law," (Opp. at 3), cuts *directly* against the Court's Order. *United States ex rel. Raffington v. Bon Secours Health Sys.*, 567 F. Supp. 3d 429, 442 (S.D.N.Y. 2021) is on all fours. In that case the court held that defendants could not argue that plaintiff failed to adequately plead an aspect of its claim (scienter) on a motion to dismiss because the court had already previously found that plaintiff's allegations of scienter were sufficient on a previous motion to dismiss, "and thus [the court's] decision is the law of the case." *Id.* So too here. DraftKings hardly argues to the contrary, noting only that it has moved to reconsider the Order (*see* Opp. at 3 n.1). Plaintiff

respectfully submits that DraftKings' motion for reconsideration, like DraftKings' argument here (which totally ignores Judge Merle's Order and the law of the case) is frivolous for all of the reasons set forth in Plaintiff's memorandum of law in opposition to that motion. (*See* ECF No. 51, the "Opposition to DraftKings' Motion for Reconsideration").

Even putting aside the law of the case doctrine, the Proposed Complaint (like the original complaint) adequately pleads that DraftKings owed Plaintiff fiduciary duties for the reasons set forth in Plaintiff's Opposition to DraftKings' Motion for Reconsideration. In short, "[w]hether a fiduciary duty exists is necessarily fact-specific to the particular case. Therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." *Childers v. New York & Presbyterian Hospital*, 36 F. Supp. 3d 292, 308 (S.D.N.Y. June 23, 2014). The Court carefully considered the specific factual allegations in the complaint, including that Plaintiff alleged (i) he was personally recruited to DraftKings by VIP Host Di Chiaro; (ii) Plaintiff was induced to play on DraftKings in exchange for bonuses and other VIP perks; (iii) Di Chiaro built a relationship of trust and friendship; and (iv) Di Chiaro "reassured" Plaintiff repeatedly that his account and information were "completely safe and secure" and that DraftKings would "put a stop" to any efforts by bad actors to access Plaintiff's account. (Order at 12.) The Court concluded that these allegations, taken together and construed in the light most favorable to Plaintiff, are "sufficient to support plaintiff's contention that defendant owed him a fiduciary duty." (*Id.*) The Proposed Complaint also contains additional allegations which set forth written and oral communication from DraftKings VIP Host Di Chiaro to Plaintiff in which Di Chiaro assured Plaintiff repeatedly, over the course of years, that he was acting with Plaintiff's "best interest at heart." (*See* Proposed Complaint ¶¶ 24, 52, 70, 96, 142, 143.)

3

DraftKings ignores the fact-heavy nature of this inquiry, and cites to highly distinguishable cases that provide no basis to claim futility here. For example, *Menton v. Experian Corp.*, 2003 US Dist. LEXIS 3325 (S.D.N.Y. Mar. 6, 2023) (cited by DraftKings) involved a consumer seeking a copy of his credit report from the credit bureau Experian, and did *not* involve any personal interaction or relationship between the parties (outside of the submission of letters to effectuate his request). *Id.* at *2-3. The *Menton* court recognized the obvious: there is "no legal authority to support the argument that credit reporting agencies are the fiduciaries of consumers merely on the basis that they are entrusted with highly sensitive information." *Id.* at 16. As DraftKings knows, the Court's Order holding that Plaintiff adequately pled that DraftKings owes him fiduciary duties was based on far more than DraftKings being "entrusted with highly sensitive information." *Id.* DraftKings' other citations are similarly inapposite—they merely stand for undisputed propositions of law in highly distinguishable cases.[3] The factual allegations in these cases do not resemble the allegations here (recited above and in the Court's Order). DraftKings has no basis to argue futility here.[4]

---

[3] *See e.g. In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022) (employment case without any discussion of informal fiduciary duties, noting that an employer requiring its employees to share personally identifiable information, without more, does not give rise to fiduciary relationship); *Benzies v. Take-Two Interactive Software*, 159 A.D.3d 629, 631 (1st Dep't 2018) ("friendship" alone, without "trust and confidence" does not establish fiduciary relationship); *P. Chimento Co. v. Banco Popular de Puerto Rico*, 208 A.D.2d 385, 386 (1st Dep't 1994) ("normal commercial relationship" insufficient to support fiduciary relationship); *Wilson-Rich v. Don Aux Assocs., Inc.*, 524 F. Supp. 1226, 1234 (S.D.N.Y. 1981) (no allegation of fiduciary relationship in the case at all, solely a confidential relationship).

[4] DraftKings also argues via footnote that the existence of fiduciary duties is somehow foreclosed by DraftKings' terms of use, which state they shall not be deemed create a fiduciary relationship. (Opp. at 6 n.2.) DraftKings builds a strawman with this argument. Plaintiff nowhere claims that DraftKings' terms of use created the fiduciary relationship—he has argued, and the Court agreed, that the interactions between Plaintiff and DraftKings over the course of years created an informal fiduciary relationship. (Order at 12.)

4

## II. The Proposed Complaint States A Claim For Fraud.

DraftKings flagrantly misrepresents Plaintiff's fraud claims, arguing that they are based on "withdrawing invitations to a baseball game and a concert." (Opp. at 1.) This is false. DraftKings did not commit fraud through any "disinvitation," it committed fraud by *lying about the reason* DraftKings was stripping Plaintiff of VIP perks (including the tickets), and *lying* about Plaintiff's access to VIP perks going forward, for the purpose of inducing Plaintiff to wager more money on DraftKings. (*See* Proposed Complaint ¶¶ 60-80.) DraftKings refers to Plaintiff's allegations regarding DraftKings' lies as "specious," which borders on bad faith. (Opp. at 1.) These allegations are drawn from DraftKings' own documents produced in this litigation.[5] (*See e.g.* Proposed Complaint ¶¶ 63-64, 74-77.) At bottom, this is a simple fraud claim: DraftKings induced Plaintiff to wager big money at DraftKings by offering exclusive VIP perks. On or around March 30, 2023, DraftKings decided to no longer provide Plaintiff with such perks (which is its right), but rather than be honest about its decision (and risk losing Plaintiff's business), DraftKings decided to lie to Plaintiff about it over the course of a number of months. These lies caused immense damage. This is fraud, and DraftKings' arguments to the contrary are unavailing:

**Materiality:** DraftKings claims that its lies are "immaterial" because they are "so obviously unimportant . . . ." (Opp. at 9.) DraftKings fails to explain why, if its lies were "unimportant," that it decided to lie at all. DraftKings argues that Plaintiff continued wagering after the assault and battery, but as explained in the Proposed Complaint, that was because

---

[5] If Plaintiff had known about DraftKings' dishonest conduct at the time of the original complaint, these allegations would have been included in the original complaint—Plaintiff learned about these lies through DraftKings' documents in discovery. (*See* ECF No. 47, Jacobs Declaration ¶¶ 11, 21.)

5

Plaintiff fully trusted Di Chiaro and DraftKings at the time, and believed that the company would protect him from any rogue actor, and that Di Chiaro was acting with Plaintiff's "best interest at heart." (Proposed Complaint ¶¶ 25, 36, 52, 70, 96.) Indeed, even though Di Chiaro declined to share the results of DraftKings' internal investigation with Plaintiff, he assured Plaintiff that he was acting in Plaintiff's "best interest," thereby obviating the need for the direct involvement of Plaintiff.[6] (*Id.* ¶ 52.) In any event, "materiality presents a mixed question of law and fact that will rarely be dispositive in a motion to dismiss." *United States SEC v. Syron*, 934 F. Supp. 2d 609, 630 (S.D.N.Y. 2013). DraftKings' contention that its lies to induce the spending of hundreds of thousands of dollars are "obviously unimportant" should be rejected.[7]

**Intent:** DraftKings' contention that Plaintiff failed to plead intent to defraud is puzzling. (*See* Opp. at 9-10.) Under New York law "intent to defraud" or "[t]he scienter element is satisfied if the misrepresentation was known to be untrue or recklessly made." *Greenway II, LLC v. Wildenstein & Co.*, 2019 U.S. Dist. LEXIS 175822, at *15 (S.D.N.Y. Oct. 8, 2019) (holding allegations in complaint adequately plead intent to defraud). The Proposed Complaint clearly demonstrates that DraftKings' VIP hosts knew their lies were untrue at the time they lied. (*See* Proposed Complaint ¶¶ 67-73-76 (chat messages between VIP Hosts Di Chiaro and Bloch laughing about Di Chiaro's lies to Plaintiff, and confirming that Bloch should lie going forward).) Regardless, "intent to defraud is typically a question of fact that will preclude summary judgment" let alone dismissal at this stage on futility grounds. *Jewish Home of*

---

[6] DraftKings continues to hide the results of its investigation from Plaintiff and this Court, claiming that all related documents are privileged. Plaintiff expects this to be the subject of future motion practice if DraftKings maintains this position.

[7] DraftKings' has the gall to refer to its misrepresentations inducing hundreds of thousands in losses as "white lies." (Opp. at 11.) This gets to the heart of the matter. DraftKings believes it can lie with impunity to its customers. The law dictates otherwise.

*Rochester v. Estate of Bochmann*, 210 A.D.3d 1410, 1413 (4th Dep't 2022).  DraftKings' argument is meritless.

**Reliance:** There is similarly no question that Plaintiff justifiably relied on DraftKings' lies.  *First*, Plaintiff pleads he relied on a multitude of lies designed to induce him to continue to spend on DraftKings (*see* Proposed Complaint ¶¶ 161, 162.)  *Second*, the *only* logical reason for DraftKings to tell these lies was to induce him to rely on such misrepresentations and continue spending.  *Third*, regardless and in all events, "[a]n evaluation of the reasonable-reliance element should involve many factors to consider and balance, no single one of which is dispositive.  Accordingly, reasonable reliance is often a question of fact for the jury rather than a question of law for the court."  *King County v. IKB Deutsche Industriebank AG*, 916 F. Supp. 2d 442, 448 (S.D.N.Y. 2013) (cleaned up).  Thus, this element is also inappropriate for resolution on a futility analysis.  DraftKings argues that Plaintiff "already believed that DraftKings had done far worse," (by working with violent criminals against Plaintiff), but, again, fails to account for Plaintiff's justifiable (albeit incorrect) belief that at the time DraftKings and Di Chiaro were acting with Plaintiff's "best interest at heart" (despite theoretical rogue actors at DraftKings).  (Proposed Complaint ¶¶ 25, 36, 52, 70, 96.)

**Damages.** As DraftKings essentially admits, Plaintiff alleges $235,182.58 in damages that flowed directly from DraftKings' lies. (Opp. at 11.)  DraftKings argues that "losses are not damages" and that "Plaintiff received precisely what DraftKings promised:  the opportunity to wager on sports contests." (Opp. at 11.)  But the Proposed Complaint alleges that Plaintiff *did not* get what he bargained for: "VIP perks [that] were without equal in the industry."  (Proposed Complaint ¶ 20.)  Losses that were induced by lies regarding access to VIP perks are damages.

7

The law requires that DraftKings face consequences for its repeated lies to Plaintiff—Plaintiff's fraud claim is adequately pled and not remotely futile.

**III.    The Proposed Complaint States A Claim Under New York General Business Law § 349.**

New York GBL Section 349 ("GBL 349") is New York's consumer protection law which bars consumer-facing companies from engaging in deceptive practices. There is no question that DraftKings engaged in a number of acts and/or practices that were materially misleading and deceptive to a reasonable consumer, including lies about a mass data breach, and access to VIP perks. (Proposed Complaint ¶ 167.) DraftKings' arguments that Plaintiff fails to state a claim under GBL 349 do not withstand scrutiny.

*First*, DraftKings' argument that its multitude of lies were not "consumer-oriented conduct" solely because "they were private conversations or messages to Plaintiff" and "were [not] directed toward other DraftKings customers" miscomprehends New York law. (*See* Opp. at 12-13.) The Court of Appeals has made clear that a GBL 349 plaintiff "need not show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff <u>or to other consumers</u>—but instead must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995) (emphasis added). Thus, DraftKings need not have told the particular lies it told Plaintiff to "other consumers", the lies need only to have an impact on "consumers at large." *Id.* DraftKings' lies about VIP perks (Proposed Complaint ¶ 167a) and about a mass hack that *DraftKings itself now claims impacted many other consumers* (Proposed Complaint ¶ 115-116, 167b) plainly have an impact on consumers at large. *See Fero v. Excellus Health Plan*, 236 F. Supp. 3d 735, 767 (W.D.N.Y. 2017) ("It is also at least plausible that [] defendants failure to disclose the purportedly inadequate data security measures . . ."—let alone to lie about them

8

directly, as DraftKings did here— ". . . would mislead a reasonable consumer"). Moreover, DraftKings' argument is based primarily on a partial quote from *Designers North Carpet, Inc. v. Mohawk Indus.*, 153 F. Supp. 2d 193, 198 (E.D.N.Y. 2001), which says that "it is well established that private contract disputes which are unique to the parties in the lawsuit are not protected by section 349."[8] (Opp. at 12.) But as DraftKings knows this is not a "private contract dispute."

*Second*, DraftKing's claim that "Plaintiff cannot establish that any statements were materially false or misleading" is risible. As an initial matter, the Proposed Complaint alleges that DraftKings "l[ied] to Plaintiff regarding the [reason for] cancellation of the Yankees/Giants VIP experience and the refusal to provide future access to exclusive VIP benefits." (Proposed Complaint ¶ 167a.) DraftKings' many false statements in this regard are taken from their own documents received in discovery. *Supra* at 5. The Proposed Complaint *also* alleges that DraftKings made false statements concerning a hack into Plaintiff's DraftKings account. (*Id.* ¶¶ 167b-c.) These include (but are not limited to) falsely telling Plaintiff that "all activity was valid" on his account while internally stating the opposite. (*Id.*) DraftKings even admits in its brief that it made false statements, but claims they "were later corrected upon additional investigation." (Opp. at 14.) Whether DraftKings is now telling the truth (after lying for years) is far from proven, as discovery has barely begun in this action.

*Finally*, DraftKings claims that Plaintiff has failed to allege a loss, which is false in at least four respects. First, DraftKings' deceptive practices directly led to Plaintiff losing his

---

[8] DraftKings' Opposition deceptively elides the portion of the quote from this case that refers to "private contract disputes." (Opp. at 12.)

9

career as a lawyer in New York.[9] (Proposed Complaint ¶ 169.) Second, DraftKings' deceptive practices led directly to Plaintiff continuing to wager on DraftKings.[10] (*Id.*) Third, DraftKings' deceptive conduct led to pain and suffering (*Id.*) and Fourth, in all events the statute provides for nominal damages of fifty dollars in the event damages are *de minimus*. See GBL § 349(h).

In sum, Plaintiff states a claim under NY GBL 349.

### IV. Plaintiff Should Also Be Permitted To Supplement Complaint with Allegations From After The Initial Filing.

DraftKings does not dispute and therefore concedes that Plaintiff should be permitted to supplement his complaint with allegations post-dating the initial filing. Thus, the Court should grant Plaintiff's motion with respect to supplementation as well as amendment.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion for leave to file the Second Amended and Supplemented Complaint annexed to the Jacobs Declaration, and for such other and further relief as the Court deems just and proper.

Dated: April 22, 2025

Respectfully submitted,

By: */s/ Steven B. Jacobs*
Steven B. Jacobs
PO Box 67
Phoenix, AZ 85001
Tel: (610) 608-3304
stevenbjacobs@gmail.com

*Plaintiff Pro se*

---

[9] DraftKings, incredibly, blames *Plaintiff*, for initiating this lawsuit to protect himself, rather than itself for working with violent criminals to threaten to kill Plaintiff.

[10] DraftKings' attempt to draw a distinction between spending on DraftKings and wagering on DraftKings is in vein. The only way to spend money on DraftKings is to wager.

10

## CERTIFICATE OF SERVICE

I, Steven Jacobs, plaintiff *pro se* in the above-captioned action, hereby certify on this 1st day of April 22, 2025, a copy of the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint was served via email on Rees F. Morgan of Coblentz Patch Duffy & Bass LLP, counsel for DraftKings, at rmorgan@coblentzlaw.com.

                                        */s/ Steven B. Jacobs*
                                        Steven B. Jacobs

11