UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|                      |                                        |
|----------------------|----------------------------------------|
| STEVEN JACOBS,       |                                        |
|   *Plaintiff*,       | **MEMORANDUM & ORDER**                 |
|   – against –        | 24-cv-03077 (NCM) (VMS)                |
| DRAFTKINGS, INC.,    |                                        |
|   *Defendant*.       |                                        |

**NATASHA C. MERLE**, United States District Judge:

On March 7, 2025, the Court issued an Order granting in part and denying in part defendant DraftKings, Inc.'s motion to dismiss. *See* Mem. & Order ("Order"), ECF No. 41. Defendant timely moved for the Court to reconsider its decision. *See* Mem. in Supp. of Mot. for Recons. ("Mot."), ECF No. 49-1. Plaintiff Steven Jacobs filed an opposition. *See* Mem. of Law in Opp'n to Def.'s Mot. for Recons. ("Opp'n"), ECF No. 51. The Court assumes familiarity with the alleged facts and procedural history of this action. *See* Order 1–4.[1] For the reasons stated below, defendant's motion for reconsideration is DENIED.

**LEGAL STANDARD**

"A motion for reconsideration is an extraordinary remedy to be employed sparingly" and "can be granted only upon a showing of exceptional circumstances." *New York v. Chambers*, No. 24-cv-00641, 2024 WL 2214312, at *1 (E.D.N.Y. May 16, 2024).[2] "Reconsideration will generally be denied unless the moving party can point to controlling

---

[1] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[2] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

1

decisions or data that the Court overlooked." *Id.*; *see also* Loc. Civ. R. 6.3. A motion for reconsideration can be granted in the event of "manifest error," but not in a case where a party "merely shows that [it] disagrees with the Court's decision." *Garcia v. BAE Cleaners Inc.*, No. 10-cv-07804, 2012 WL 98511, at *1 (S.D.N.Y. Jan 11, 2012).

## DISCUSSION

### I. Claims for Aiding and Abetting in General

The instant motion argues that the Court erred in allowing plaintiff's claims for aiding and abetting tortious conduct to proceed because defendant never owed a fiduciary duty to plaintiff to protect plaintiff's personal information. Mot 4. Under New York law, aiding and abetting claims require a plaintiff to plead "(1) the existence of an underlying tort; (2) the defendant's knowledge of the underlying tort; and (3) that the defendant provided substantial assistance to advance the underlying tort's commission." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012). Defendant's motion to dismiss argued, among other things, that plaintiff did not plead facts that demonstrate the third prong—substantial assistance—and therefore plaintiff's claims must be dismissed. Mem. of Law in Supp. of Mot. to Dismiss ("MTD") 16, ECF No. 33-1. A defendant provides "substantial assistance" if it "affirmatively assists . . . or fails to act when required to do so, thereby enabling" the tortious conduct. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006). "Fail[ing] to act when required to do so" can constitute substantial assistance only where a defendant "owes a fiduciary duty directly to the plaintiff." *Id.* Defendant's motion to dismiss argued that plaintiff did not successfully plead either affirmative assistance or inactive assistance. *See* MTD 15–17; *see also* Reply Br. in Supp. of Mot. to Dismiss ("MTD Reply") 9–11, ECF No. 33-6. The Court agreed that plaintiff's complaint did not successfully plead affirmative assistance but also found that the complaint alleged

sufficient facts to plead that defendant owed plaintiff a fiduciary duty and failed to act. Order 10–13.

## II. The Court's Prior Reasoning

Plaintiff's opposition to defendant's motion to dismiss argued that defendant owed plaintiff a fiduciary duty to safeguard plaintiff's personal information considering the entirety of plaintiff's and defendant's relationship. Mem. of Law in Opp'n to Mot. to Dismiss ("MTD Opp'n") 19–20, ECF No. 33-4. The Court's Order held that "a conventional business relationship is insufficient to support a fiduciary relationship," but a fiduciary relationship may exist if a plaintiff "has reposed trust or confidence in defendant such that the relationship between plaintiff and defendant exhibits the characteristics of de facto control and dominance." Order 11 (first citing *42-50 21st St. Realty LLC v. First Cent. Sav. Bank*, No. 20-cv-05370, 2022 WL 1004187, at *6 (E.D.N.Y. Apr. 4, 2022); and then citing *Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 554 (E.D.N.Y. 2015)).

The Court found that plaintiff's complaint included sufficient facts to plausibly allege that the relationship between plaintiff and defendant exhibited characteristics of de facto control and dominance. Order 11–12. The Court observed that "plaintiff alleges that DraftKings' VIP host Di Chiaro recruited and induced plaintiff to engage in legal sports betting with defendant by offering bonuses and other VIP perks," and that "[p]laintiff characterizes his relationship with Di Chiaro as one of [full] trust." Order 12 (quoting Am. Compl. ¶¶ 17–18, 26). Plaintiff further alleges that after he reported his concerns about his information being improperly shared, Di Chiaro reassured plaintiff that his information was completely safe and secure and DraftKings would put a stop to any efforts to gain access to plaintiff's personal information. Order 12 (quoting Am. Compl. ¶ 29). The Court held that "[v]iewed in the light most favorable to plaintiff, these allegations suggest that

3

defendant built a relationship of trust and promised that plaintiff's personal information would be secure," and that this was sufficient, at the pleading stage, to allege that defendant owed plaintiff a fiduciary duty. Order 12 (citing *Marini v. Adamo*, 995 F. Supp. 2d 155, 202 (E.D.N.Y. 2014), *aff'd*, 644 F. App'x 33 (2d Cir. 2016) (summary order) (finding fiduciary duty based on relationship of "confidence and reliance")).

### III. Defendant's Objections

Defendant's motion for reconsideration argues that the Court erred in finding that plaintiff alleged that the parties' relationship exhibited characteristics of de facto control and dominance. Mot. 4. Defendant asserts that the complaint never alleges that defendant had control and dominance over plaintiff "in any way" and at most the complaint "merely alleges that a customer-service representative (called a 'VIP Host') agreed in general terms to maintain the confidentiality of [plaintiff's] personal information." Mot. 4. Defendant characterizes these allegations as "threadbare" and argues that they are not sufficient to support the proposition that defendant had a fiduciary obligation to safeguard plaintiff's information. Mot. 4.

Defendant also argues that the Court overlooked a distinction between control and dominance with respect to "the actual transaction between consumer and company" versus control and dominance with respect to mere "issues ancillary to the actual transaction." Mot. 4–5. Defendant contends that "*every* case cited by the parties *and* the Court focuses on instances where a party had complete control and dominance over *commercial* transactions undertaken by the other," Mot. 4 (emphasis in original), and that this commonality between the cited cases means that "issues ancillary to the actual transaction . . . [cannot] create a fiduciary obligation," Mot. 5. Defendant asserts that "maintaining the confidentiality of the customer's address" is one such "issue[] ancillary"

4

to the relationship between plaintiff and defendant. Mot. 5. In sum, defendant appears to take the position that it, as a sportsbook, could never have a fiduciary duty to maintain the privacy of a bettor's personal information regardless of the facts pled by plaintiff because customer privacy is inherently "ancillary" to some unspecified "actual transaction." Mot. 5.

Finally, defendant notes that "[n]ormal commercial relationships" do not create a fiduciary relationship, Mot. 5, and cites a case holding that "a [n]ormal commercial relationship [does not] assume[] a fiduciary nature whenever the [parties] become friendly," *P. Chimento Co. v. Banco Popular de Puerto Rico*, 617 N.Y.S.2d 157, 159 (1st Dep't 1994). Defendant also cites several other cases where courts found the absence of a fiduciary relationship. Mot. 6. Defendant additionally warns that if "[n]ormal commercial relationships" could create fiduciary relationships, "then *any* statement by a customer-service representative about safeguarding personal information could create a fiduciary relationship." Mot. 6 (emphasis in original). Defendant insists that "[t]he law does not permit such a result." Mot. 6.

**IV. Analysis**

The Court does not agree that its prior reasoning was in error or overlooked controlling precedent.

First, the Court disagrees that the amended complaint fails to allege "control and dominance" in any way. *See* Mot. 4. The Court's Order found that plaintiff pled a series of facts regarding the relationship between plaintiff and defendant, including that defendant's VIP Host Di Chiaro "recruited" and "induced" plaintiff to bet money on defendant's sports betting platform, that Di Chiaro developed a relationship with plaintiff "akin to a friendship" where plaintiff "fully trusted" Di Chiaro, and that after plaintiff expressed concern to Di Chiaro about Spanky accessing plaintiff's information, Di Chiaro

5

"reassured" plaintiff that plaintiff's information was "completely safe and secure" and that defendant would "put a stop" to any efforts by Spanky to gain access to plaintiff's personal information. Order 12 (quoting Am. Compl. ¶¶ 17–18, 26, 29). The Court cited a case affirmed by the Second Circuit where a district court found a fiduciary duty based on a relationship of "confidence and reliance," and held that, at the pleading stage, plaintiff's allegations were "sufficient to support plaintiff's contention that defendant owed him a fiduciary duty." Order 12 (citing *Marini*, 995 F. Supp. 2d at 202, *aff'd*, 644 F. App'x 33).

Second, the Court does not agree with defendant's attempt to paint fiduciary duties as occurring only in the context of specific commercial "transactions" and relating to those "transactions" exclusively, as distinguished from "issues ancillary" to those transactions. Defendant argues that every case cited by the Court that finds a fiduciary duty does so in the context of "transactions," but tellingly, defendant cites no cases actually discussing or endorsing a distinction between "transactions" and "ancillary [issues]." Mot. 5–6. Moreover, even if this distinction had any support in caselaw, defendant provides no citation or analysis, besides its *ipse dixit* assertion, that the protection of confidential information is ancillary to the commercial "transactions" between plaintiff and defendant here. Finally, the Court finds defendant's focus on specific "transactions" particularly unpersuasive in light of the fact that courts will routinely recognize a fiduciary duty arising from a *relationship*—a course of repeated interactions—not necessarily from a single transaction. Case law refers to "informal fiduciary relationship[s]" based on a course of dealing. *See, e.g.*, *Holmes v. Lorch*, 329 F. Supp. 2d 516, 527 (S.D.N.Y. 2004) ("Plaintiff . . . proffered evidence sufficient to create a material issue of fact as to whether an informal fiduciary relationship existed" based on conduct that spanned four years); *see also Apple Records v. Capitol Records*, 529 N.Y.S.2d 279, 283 (1st Dep't 1988) ("A fiduciary

6

relationship, whether formal or informal, is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another and might be found to exist, in appropriate circumstances, between close friends or even where confidence is based upon prior business dealings."). The Court finds defendant's characterization of the law regarding fiduciary duty unpersuasive and declines to find a bright-line rule excluding plaintiff and defendant from being in a fiduciary relationship warranting protection of plaintiff's confidential information.

Third, the cases that defendant cites that found no fiduciary relationship under different facts do not undermine the court's reasoning here. For example, defendant cites a case noting that "normal commercial relationship[s]" do not become fiduciary relationships merely because the parties "become friendly." *P. Chimento*, 617 N.Y.S.2d at 159. But plaintiff is not alleging merely that he and VIP Host Di Chiaro became friendly—plaintiff alleges that he was personally recruited by Di Chiaro to bet on defendant's platform, that he and Di Chiaro built a relationship of full trust and friendship, and that Di Chiaro "reassured" plaintiff repeatedly that plaintiff's account and information were "completely safe and secure" and that defendant would "put a stop" to any efforts by bad actors to access plaintiff's account. Am. Compl. ¶¶ 17–18, 26. It was the sum total of these allegations, considered as a whole and construed in the light most favorable to the non-moving party, that the Court found "sufficient to support plaintiff's contention that defendant owed him a fiduciary duty." Order 12. Similarly, the Court did not hold that "*any* statement" by a customer-service representative about safeguarding personal information could create a fiduciary relationship. Mot 6. Rather, the Court held, here, that the aggregate of alleged recruitment, repeated interactions, trust, friendship, and explicit

verbal assurances—all presumed to be true for purposes of the motion to dismiss—were sufficient to plausibly allege the existence of a fiduciary relationship. Order 12.

Defendant characterizes plaintiff's allegations as "threadbare" and thus insufficient to state a claim." Mot. 4. The Court does not agree that plaintiff has raised only "threadbare allegations." The adjective "threadbare" is typically used in reference to a widely quoted passage from *Ashcroft v. Iqbal*: "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." 556 U.S. 662, 663 (2009). Plaintiff's complaint consists of more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. Indeed, the complaint includes a series of non-generic factual claims alleging specific conduct and verbal statements over an extended period of time. Am. Compl. ¶¶ 17–18, 26, 29. Though the Court cannot opine on what the evidence may or may not ultimately bear out, plaintiff's complaint is not so devoid of specific allegations as to forfeit the presumption at the motion-to-dismiss stage that the complaint's allegations are true.

Finally, the Court notes that "[w]hether a fiduciary duty exists is necessarily fact-specific to the particular case" and "[t]herefore, a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 308 (S.D.N.Y. 2014); *see also Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 102 (S.D.N.Y. 2004) (At the motion-to-dismiss stage, it is commonly "impossible to say that plaintiff will be unable to prove the existence of a fiduciary relationship"); *Apple Records*, 529 N.Y.S.2d at 283 ("[W]hile the contract did not establish a formal fiduciary relationship, the pleadings were sufficient to raise an issue as to the existence of an informal one."). The Court is not

persuaded that it should depart from typical practice and conclusively resolve the existence of a fiduciary relationship at this stage.

## CONCLUSION

For the reasons set forth above, defendant's motion for reconsideration is DENIED.

**SO ORDERED.**

                                           _/s/ Natasha C. Merle_
                                           NATASHA C. MERLE
                                           United States District Judge

Dated:       November 26, 2025
               Brooklyn, New York