UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                                                      :

STEVEN JACOBS,                                            :

                                    Plaintiff,                :                 **ORDER**

                -against-                          :             24 Civ. 3077 (NCM) (VMS)

DRAFTKINGS INC.,                              :

                                  Defendant.         :

----------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

      Plaintiff Steven Jacobs ("Plaintiff") moves for leave to file a second amended and supplemental complaint to add claims for breach of fiduciary duty, fraud and violation of § 349 of the New York General Business Law, N.Y. Gen. Bus. L. § 349 (the "GBL"), as well as additional allegations regarding conduct that occurred following the commencement of this action. See generally ECF Nos. 45-47. Defendant DraftKings Inc. ("Defendant") opposes the motion. See generally ECF No. 50. Plaintiff replies. See generally ECF No. 52. For the reasons set forth below, the motion is granted.

**I.      DISCUSSION**

      The Court discusses Plaintiff's motion to file an amended pleading and to file a supplemental pleading each in turn.

### A. Motion To Amend Pleading

A party's right to amend its pleading is governed by Federal Rules of Civil Procedure 15 and 16, "which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." Sacerdote v. New York Univ., 9 F.4th 95, 115 (2d Cir. 2021).

The first standard permits a party to amend its pleading "as of right without court permission." Id. (citation omitted). This standard applies until expiration of either (1) the time period set forth in Federal Rule of Civil Procedure 15(a)(1), which permits a party to amend its pleading "no later than . . . 21 days after serving it" or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier," or (2) the time period otherwise prescribed by a scheduling order for amendment of pleadings as a matter of right. Id. at 115.

The second standard, set forth in Federal Rule of Procedure 15(a)(2), permits a party to amend its pleading either (1) on written consent of the opposing party or (2) on motion by the party seeking leave to do so, which the court should grant "freely . . . when justice so requires," and should deny only "upon a showing of undue delay, bad faith, dilatory motive, [or] futility." Id. (citation & quotations omitted). This standard applies up to and including the date set forth in a scheduling order after which no pleading amendments will be permitted. See id.; see also Fed. R. Civ. P. 16(b)(3)(A) (requiring that a scheduling order "limit the time to join other parties, amend the pleadings, complete discovery, and file motions").

The third standard permits a party to amend its pleading "only up[on] a showing of the good cause that is required to modify a scheduling order under Rule 16(b)(4)," see Sacerdote, 9

F.4th at 115 (citation omitted); see also Fed. R. Civ. P. 16(b)(4) (instructing that "[a] schedule may be modified only for good cause and with the judge's consent"); establishing "good cause depends on the diligence of the moving party," Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009) (citation & quotations omitted). This standard applies upon expiration of the date set forth in a scheduling order after which no pleading amendments will be permitted. See id. (citation omitted); see also Fed. R. Civ. P. 16(b)(3)(A).

Under both the second and third standards,[1] when leave to amend is required, the four bases upon which a motion for leave to amend may be denied are futility, bad faith, undue delay and undue prejudice to the opposing parties. See Cohen v. Am. Airlines, Inc., 13 F.4th 240, 247 (2d Cir. 2021) (applying the second standard, pursuant to Federal Rule of Civil Procedure 15(a)(2) (citations omitted)). The Court discusses futility, bad faith, undue delay and undue prejudice each in turn below.

1. **Futility**[2]

For the reasons discussed below, the Court concludes that the proposed claims for breach of fiduciary duty, fraud and violation of the GBL are not futile.

---

[1] The second standard applies here, given that the filing of this motion, see generally ECF Nos. 45-47, preceded the deadline for joinder or amendment of the pleadings, see 6/18/2025 Order.

[2] Neither Plaintiff nor Defendant explicitly addresses the choice-of-law question posed by the futility analysis. Nonetheless, "[i]n a diversity case such as this one, the choice-of-law rules of New York, the forum state, govern," and, "[u]nder New York choice-of-law rules, where the parties agree that [a certain jurisdiction's] law controls, which includes briefing that "assume[s] that New York law controls," thereby providing "implied consent" to the application of New York law, such agreement or consent "is sufficient to establish choice of law." Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 152 (2d Cir. 2016) (citations & quotations omitted)). Here, both Plaintiff and Defendant apply New York law in their briefing, see generally ECF Nos. 46, 50 & 52, constituting implied consent sufficient to establish New York law as the choice of law for this motion.

3

Concluding that proposed amendments are futile requires "a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To determine whether granting leave to amend would be futile, we consider the proposed amendments and the original complaint." In re Trib. Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021) (citations & quotations omitted). Courts addressing motions to dismiss pursuant Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in favor of the plaintiff." Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566-67 (2d Cir. 2016) (citations omitted). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation & quotations omitted). With regard to a motion for leave to amend, the party opposing the motion for leave to amend bears the burden of showing futility. See Perez v. Escobar Constr., Inc., 342 F.R.D. 378, 380 (S.D.N.Y. 2022) (citation omitted); Travelex Currency Servs., Inc. v. Puente Enters., Inc., 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020) (citation omitted); Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (citation omitted).

### a. Breach Of Fiduciary Duty

The elements of a claim for breach of fiduciary duty under New York law "are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." Golobe v. Mielnicki, 44 N.Y.3d 86, 93 (2025) (citation & quotations omitted). For the reasons discussed below, Plaintiff has sufficiently pleaded this claim.

### a. Existence Of A Fiduciary Relationship

The first element, namely the existence of a fiduciary relationship, is satisfied here.

On Defendant's motion to dismiss Plaintiff's first amended complaint, the District Court, in denying Defendant's motion as to Plaintiff's claim for aiding and abetting assault and battery, held that Plaintiff had sufficiently pleaded that Plaintiff and Defendant had a fiduciary relationship. See ECF No. 41 at 9, 11-13. In doing so, the District Court reasoned that "a conventional business relationship is insufficient to support a fiduciary relationship," as, "[i]nstead, [t]o establish the existence of a fiduciary relationship, a plaintiff must allege that it has reposed trust or confidence in defendant such that the relationship between plaintiff and defendant exhibit[s] the characteristics of de facto control and dominance." Id. at 11 (citations & quotations omitted). The District Court held that the allegations in Plaintiff's first amended complaint, namely (1) "that Draftkings' VIP host Di Chiaro recruit[ed] and induced plaintiff to engage in legal sports betting with defendant by offering bonuses and other VIP perks," (2) that Plaintiff's "relationship with Di Chiaro [w]as one of trust and akin to a friendship" and (3) that "Di Chiaro reassured plaintiff that his information was completely safe and secure and [that] DraftKings would put a stop to any efforts to gain access to plaintiff's personal information" following Plaintiff's report to Defendant of "his conversation with Spanky," "suggest that defendant built a relationship of trust and promised that plaintiff's personal information would be secure," such that, "[a]t the pleading stage, this is sufficient to support plaintiff's contention that defendant owed him a fiduciary duty." Id. at 11-12 (citing ECF No. 20 ¶¶ 17-18, 26, 29) (quotations omitted). The District Court denied Defendant's motion for reconsideration as to its holding on the sufficiency of the pleading as to the existence of a fiduciary relationship between Plaintiff and Defendant. See ECF No. 90 at 9.

Given that the allegations upon which the District Court relied in holding that, in the first amended complaint, Plaintiff had sufficiently pleaded the existence of a fiduciary relationship with Defendant remain in the proposed second amended complaint, see ECF No. 47 ¶¶ 20-22, 39, the law-of-the-case doctrine dictates the conclusion that the proposed second amended complaint contains allegations sufficient to support the existence of a fiduciary relationship between Plaintiff and Defendant. See Choi v. Tower Research Capital LLC, 2 F.4th 10, 21 (2d Cir. 2021) (describing the law-of-the-case doctrine as a doctrine that "forecloses reconsideration of issues that were decided – or that could have been decided – during prior proceedings" and that "applies both to that which is expressly decided as well as to everything decided by implication" and reasoning that, "[w]hile the doctrine does not rigidly bind [us] to [our] former decisions, we generally adhere to prior decisions in subsequent stages of the same case unless cogent and compelling reasons militate otherwise," with such reasons including "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (citations & quotations omitted)).[3]

### ii. Misconduct By Defendant And Damages Directly Caused By Defendant's Misconduct

The second and third elements, namely misconduct by Defendant and damages directly caused by Defendant, respectively, are satisfied here. Defendant has not argued that these elements are not satisfied, see ECF No. 50 at 9-12, and has therefore failed to meet its burden of showing futility as to these elements, see Perez, 342 F.R.D. at 380 (citation omitted); Travelex Currency Servs., Inc., 449 F. Supp. 3d at 395 (citation omitted); Amaya, 285 F.R.D. at 253 (citation omitted).

---

[3] Defendant has not offered any such reasons since the issuance of the District Court's decision on Defendant's motion for reconsideration.

### b. Fraud

The elements of a claim for fraud under New York law are "(1) a misrepresentation or a material omission of fact, (2) which is either untrue and known to be untrue or recklessly made, (3) made for the purpose of inducing the other party to rely upon it, (4) justifiable reliance of the other party on the misrepresentation or material omission, and (5) injury." Golobe, 44 N.Y.3d at 92 (citations & quotations omitted).[4]  For the reasons discussed below, Plaintiff has sufficiently pleaded this claim.

#### i. Material Misrepresentation Or Omission

The first element, namely a material misrepresentation or omission, is satisfied here. Plaintiff's claim is based upon alleged material misrepresentations as to his entitlement to access Defendant's "VIP" events.

In the proposed second amended complaint, Plaintiff alleges that, "[i]n or around January 2022, a VIP host at DraftKings, Joe Di Chiaro . . [,] contacted Plaintiff in order to recruit him to play on DraftKings in light of the recent legalization of mobile sports gambling in New York," emphasizing "that DraftKings' VIP perks were without equal in the industry, and that DraftKings could provide VIP experiences and events that were unique, special, and valuable, especially for sports fans." ECF No. 47 ¶ 20.  As such, "Di Chiaro induced Plaintiff to play substantial volume on DraftKings by offering bonuses, VIP tickets to events, and other such VIP perks." Id. ¶ 21. According to Plaintiff, Defendant materially misrepresented Plaintiff's entitlement to access Defendant's "VIP" events, as Plaintiff was not granted access to special events in at least two instances.

---

[4] Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

First, as alleged in the proposed second amended complaint, Joe Di Chiaro, "a VIP host" with Defendant, "arranged a VIP experience at a Giants/Yankees game scheduled for April 1, 2023," which "included dinner with a former player, field access for batting practice, and VIP tickets to the game." Id. ¶¶ 20, 60. The day before the event, on March 31, 2023, at approximately 5:00 PM, Mr. Di Chiaro called Plaintiff "and told him that the Yankees (not DraftKings) had cancelled the VIP experience, and that the cancellation was due to a threat of rain." Id. ¶ 67. Internal messages between Defendant's employees from both before and after the planned event, which are discussed below, indicate that the event was not cancelled due to the threat of rain.

Before the planned event, on March 30, 2023, at approximately 4:00 PM, an unnamed employee of Defendant sent a message to Mr. Di Chiaro stating that the unnamed employee planned to send the tickets to the event to Plaintiff the next day and stating that the event "usually won't be cancelled unless the game is called off," given a forecast of potential rain for April 1, 2023. Id. ¶ 63 (quotations omitted). On March 30, 2023, at approximately 10:20 PM, however, Mr. Di Chiaro sent a message to the same unnamed employee and instructed her to refrain from sending the tickets to Plaintiff without further direction from him because of an "[i]nsane situation going on & we may have to pull the tickets"; Plaintiff believes that Mr. Di Chiaro was referring to the "[d]eath [t]hreat" received from Spanky and Defendant's ties to Spanky. Id. ¶¶ 64-65 (quotations omitted). According to Plaintiff, this explanation was false, as "a decision had apparently been made by DraftKings to not allow Jacobs to be around other DraftKings players (such as at VIP experiences)," and "this decision was made to avoid Jacobs revealing DraftKings' conduct vis-à-vis Spanky." Id. ¶¶ 69-71.

8

After the planned event, in May 2023, this allegedly correct explanation was confirmed in internal messages between Mr. Di Chiaro and Max Bloch, another "VIP host" with Defendant, wherein Mr. Di Chiaro confirmed Mr. Bloch's understanding "that the Yankees/Giants experience was cancelled due to [Jacobs] being ridiculous, not rain." Id. ¶¶ 73-74.

Second, as alleged in the proposed second amended complaint, on May 16, 2023, Mr. Bloch sent a message to Mr. "Di Chiaro explaining that Jacobs was asking for tickets in DraftKings' suite to a Billy Joel concert at Madison Square Garden" and stating that Mr. "Bloch was going to reply by lying and saying that the box was full, which Mr. Di Chiaro confirmed was the appropriate course of action because "Michael Rybczynski, DraftKings' Director of Player Development, want[ed] to avoid [Jacobs] in any spaces with other players." Id. ¶¶ 75-76 (quotations omitted). Mr. "Bloch proceeded to lie to Jacobs, falsely claiming the box was full, rather than telling him the true reason his request for tickets was denied." Id. ¶ 77.

Defendant does not challenge the falsity of the aforementioned statements made to Plaintiff but, rather, challenges their materiality because "[n]o reasonable person in Plaintiff's position would reconsider whether to enter into future transactions with DraftKings based on the alleged misrepresentations," namely the alleged misrepresentations as to the reasons that Defendant denied Plaintiff access to the baseball game and the Billy Joel concert. ECF No. 50 at 13. Defendant's argument is unavailing. Under New York law, "[a] fraud claim must be based on the representation of a material existing fact," with materiality referring "to statements that are sufficiently important or relevant to influence the plaintiff's decision." Aguirre v. Best Care Agency, Inc., 961 F. Supp. 2d 427, 449 (E.D.N.Y. 2013) (citations & quotations omitted). Plaintiff pleaded that Defendant's misrepresentations as to the availability of special access to events and the reasons for the cancellation of those events were material, in that they led him to

9

"continue[] spending money on DraftKings after March 31, 2023," ECF No. 47 ¶ 161, which was the date on which Mr. Di Chiaro informed Plaintiff that the baseball game was cancelled due to the threat of rain, thereby sufficiently pleading the materiality of the misrepresentations.

### ii. Knowledge Of Or Reckless Disregard As To Falsity

The second element, namely misconduct by Defendant, is satisfied here. Defendant has not argued that this element is not satisfied, see ECF No. 50 at 12-15, and has therefore failed to meet its burden of showing futility as to this element, see Perez, 342 F.R.D. at 380 (citation omitted); Travelex Currency Servs., Inc., 449 F. Supp. 3d at 395 (citation omitted); Amaya, 285 F.R.D. at 253 (citation omitted).

### iii. Intent To Induce Reliance

The third element, namely intent to induce reliance, is satisfied here.

With regard to Defendant's intent to induce Plaintiff's reliance, through his continued patronage of Defendant, Plaintiff alleges that the "lies to Jacobs were told with the express intent of inducing Jacobs to continue as a DraftKings customer and spend more of his money on DraftKings," as, in the first instance, "Di Chiaro induced Plaintiff to play substantial volume on DraftKings by offering bonuses, VIP tickets to events, and other such VIP perks," and as "Di Chiaro, Bloch, and DraftKings knew full well that if DraftKings was truthful about its reason for cancelling the Yankees/Giants experience, and truthful about the fact that it was not taking the Death Threat seriously, then Jacobs would have immediately stopped spending money on DraftKings." ECF No. 47 ¶¶ 21, 78. Plaintiff also alleges that "the true reason" for Defendant's misrepresentations was that it "did not want Jacobs around other players because, on information and belief, it did not want its conduct vis-à-vis Spanky to be publicized." Id. ¶ 157.

Defendant contends that Plaintiff has failed to sufficiently plead particularized facts supporting the theory that, in making the aforementioned misrepresentations to Plaintiff, Defendant intended to induce Plaintiff's continued patronage of Defendant and that Plaintiff has pleaded that Defendant's actual intent was to separate Plaintiff from Defendant's other patrons, rather than to induce Plaintiff's further patronage of Defendant. See ECF No. 50 at 13-14. As to the former, Defendant is mistaken that Plaintiff is required to plead Defendant's intent through particularized facts, as, pursuant to Federal Rule of Civil Procedure 9(b), intent may be pleaded generally. See supra, n.4. As to the latter, under the most favorable interpretation of Defendant's argument, Plaintiff has pleaded that Defendant's intent was to separate Plaintiff from Defendant's other patrons and to induce Plaintiff's continued patronage of Defendant by having Plaintiff continue to believe the special benefits were available and that Defendant was taking the death threat seriously. See ECF No. 47 ¶¶ 21, 78. This mixed motive is sufficient to conclude that Plaintiff has sufficiently pleaded this element.

### iv. Justifiable Reliance

The fourth element, namely justifiable reliance, is satisfied here. Defendant asks the Court to adopt its argument that Plaintiff's contention that he would not have continued to patronize Defendant, but for its material misrepresentations, is implausible because he alleges that he still would have patronized Defendant in a more limited context for the purpose of releasing bonuses or promotional awards,[5] and because Plaintiff already believed that Defendant had engaged in a conspiracy to orchestrate an attack on Plaintiff by Spanky, with the allegedly improper provision of information to Spanky by Defendant having occurred on March 3 and 4,

---

[5] Continued patronage of Defendant, to a limited extent, appears to be necessary to "release" or "collect" bonuses achieved. See ECF No. 47 ¶¶ 68, 80, 160 & 162.

11

2023, see id. ¶¶ 35 & 42, and with the allegedly resulting attack having occurred on March 30, 2023, see id. ¶ 1, which is far more significant that Defendant's "alleged white lies." ECF No. 50 at 14-15 (citations omitted). Defendant's argument, at this procedural posture, is unconvincing. Determining "whether a party's reliance is reasonable, or justifiable, is highly fact-intensive, and thus generally not amenable to resolution as a matter of law on a motion to dismiss." Bennett v. Bennett, 203 N.Y.S.3d 754, 759 (3rd Dep't 2024) (citations omitted). Even still, Plaintiff alleges that he believed "that [Mr.] Di Chiaro was acting in good faith and trying his absolute best to do right by" Plaintiff, with Mr. Di Chiaro having expressed that he "had [Jacobs'[s]] best interest at heart" and "that DraftKings was taking the conduct alleged about its complicity with Spanky extremely seriously," thereby relying on Mr. Di Chiaro's purportedly false assurances. ECF No. 47 ¶¶ 70-71 (quotations omitted); ECF No. 52 at 8. As such, Plaintiff has sufficiently pleaded this element.

### v. Injury

The fifth element, namely an injury, is satisfied here.

Plaintiff alleges that he "was severely damaged by continuing to spend money on DraftKings in an amount no less than $235,182.58." ECF No. 47 ¶ 163. Defendant argues that "it is unclear what 'spend' means here," which is presumably that Plaintiff "wagered $235,182.58 on DraftKings' platform," and that Plaintiff "does not allege that he lost money from those wagers." ECF No. 50 at 15. In response, Plaintiff simply states that he "alleges $235,182.58 in damages that flowed directly from DraftKings' lies," without offering whether he "won" more money than he spent when patronizing Defendant's business, and that he "did not get what he bargained for," namely "VIP" perks. ECF No. 52 at 8 (citations omitted).

12

Under New York law, with regard to the injury, or damages, element of a claim for fraud, "the true measure of damages for fraud is indemnity for the actual pecuniary loss sustained as the direct result of the wrong." AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc., 661 F. App'x 2, 4 (2d Cir. 2016) (citation & quotations omitted); IDT Corp. v. Morgan Stanley Dean Witter & Co., 923 N.Y.S.2d 840, 840 (1st Dep't 2011) (stating that, "to the extent plaintiff seeks damages based on fraud for other than pecuniary loss, such damages are not recoverable" (citations omitted)).

Here, as Defendant highlights, Plaintiff simply pleaded that he spent money on Defendant's platform, but his allegation, as written, does not inform the Court of whether he sustained an actual pecuniary loss, as Plaintiff certainly could have "won" more money than he spent or the same amount of money that he spent. In addition, as described above, Plaintiff also contends that he was injured in the form of lost "VIP" perks, to which Defendant had materially misrepresented that Plaintiff was entitled. Attending a Major League Baseball game, accompanied by dinner with a former player and field access for batting practice, and attending a Billy Joel concert in a suite at Madison Square Garden are certainly entitlements that would have had a pecuniary value. Plaintiff alleged that he was unlawfully deprived of these benefits.

Accordingly, Plaintiff has sufficiently pleaded this element of the claim.[6]

---

[6] Plaintiff alleges that he suffered emotional harm. See ECF No. 47 ¶ 11. While some scholarship has suggested that emotional distress damages for fraud should be compensable, see, e.g., Jonathan G. Lester, Note, The True Benefit of the Bargain: How Emotional Distress Damages Make Fraud Victims Whole, 62 Boston College L. Rev. 703 (2021), they do not appear to be compensable here under New York law. Were another state's laws applicable, such damages might be available. The closest New York analog may be damages for intentional infliction of emotional distress, but, Plaintiff's claim for intentional infliction of emotional distress was previously dismissed by the District Court. See ECF No. 41 at 13-15.

c.     **Violation Of The GBL**

The elements of a claim for violation of the GBL are that "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." Himmelstein, McConnel, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., 150 N.Y.S.3d 79, 84 (N.Y. 2021) (citations omitted).  Consumer-oriented conduct, in relation to the GBL, is an act or practice that "has a broader impact on consumers at large," and "what matters is whether the defendant's allegedly deceptive act or practice is directed to the consuming public and the marketplace." Id. (citations omitted).  For the reasons discussed below, Plaintiff has sufficiently pleaded this claim.

i.     **Defendant's Consumer-oriented Conduct**

The first element, namely that Defendant's conduct was consumer-oriented, is satisfied here.

Plaintiff alleges that Defendant's consumer-oriented conduct is "[l]ying to Plaintiff regarding the cancellation" of certain "VIP" benefits; "[l]ying to Plaintiff multiple times regarding the hack . . . , including by making the false claims that 'all activity was valid' on Plaintiff's account and that the hack occurred from Plaintiff's apartment building and IP address"; and "[l]ying to Plaintiff and concealing from Plaintiff and potentially thousands of others a supposed 'mass hack' that took place on October 2, 2023." ECF No. 47 ¶ 167.

Defendant contends that the conduct complained of by Plaintiff was directed to Plaintiff, rather than consumers at large, such that it does not satisfy the requirements of this element. See ECF No. 60 at 15-18.

Plaintiff's allegations as to the alleged lies made directly to him by Defendant about his own "VIP" perks and his own account with Defendant fall outside the scope of consumer-oriented conduct for purposes of the GBL. Plaintiff also alleges that Defendant "conceal[ed] from Plaintiff and potentially thousands of others a supposed 'mass hack' that took place on October 2, 2023." ECF No. 47 ¶ 167(c). When this allegation is read together with the allegations in Plaintiff's proposed second amended complaint that Defendant "was required by law to ensure privacy over" its data and that Defendant "claims that Plaintiff's account was one of multiple accounts that was part of a mass hack" promptly discovered by Defendant, ECF No. 47 ¶¶ 38 & 115, Plaintiff sufficiently pleaded consumer-oriented conduct for purposes of the GBL. See Yuille v. Uphold HQ Inc., 686 F. Supp. 3d 323, 347 (S.D.N.Y. 2023) (reasoning, in the data breach context, that a claim for violation of the GBL "can be founded on a materially deceptive omission," provided that the "defendant fails to supply a consumer information that it alone possesses, and where that information would be material or important to a reasonable consumer and where the consumer could not have reasonably obtained the information other than through the defendant" (citations & quotations omitted)).

Accordingly, Plaintiff has sufficiently pleaded this element.

      ii.      **Defendant's Materially Deceptive Or Misleading Act Or Practice**

The second element, namely that Defendant's act or practice was materially deceptive or misleading, is satisfied here. Defendant's argument to the contrary is premised upon the communications made directly between Plaintiff and Defendant. See ECF No. 50 at 18-19. They are not the only disputed communications. As noted above, Plaintiff alleged that Defendant's failed to inform consumers of the alleged mass hack, of which Defendant had knowledge, which is sufficient to constitute a materially deceptive act or practice. Cf. Yuille,

15

686 F. Supp. 3d at 349 (reasoning that, assuming "that Plaintiff has plausibly alleged that Defendant did not properly monitor activity on its platform and that it failed to safeguard Plaintiff's account, Plaintiff has not plausibly alleged that Defendant knew that it was failing to adequately monitor its platform and to protect accounts on the platform and that not disclosing that fact was somehow misleading") (emphasis in original). Accordingly, Plaintiff has sufficiently pleaded this element.

### iii.  Injury

The third element, namely an injury, is satisfied here.

Plaintiff alleges that he "lost his job and career as a New York lawyer, and sustained physical, emotional, and psychological injuries, along with pain and suffering." ECF No. ¶ 169.

Defendant argues that Plaintiff's loss of his job and career is not a compensable injury because Plaintiff chose to litigate this action and make the issues public. See ECF No. 50 at 19-20. Defendants reason that any money spent on Defendant's platform by Plaintiff is not a compensable injury because it is unrelated to the GBL claim of the data hack and because he may not have suffered an actual loss if he "won" more money than he spent on the platform. See id. at 20. As to the former, as pleaded, the allegations in the proposed second amended complaint do not tie Plaintiff's loss of his job and his career solely to the publicity of the issues in this lawsuit, see ECF No. 47 ¶ 124 (stating that, "[o]n June 26, 2024, as a direct and proximate result of DraftKings' conduct alleged herein (and made worse by the public statement from DraftKings that falsely asserted Jacobs made misrepresentations in Court papers), Jacobs was asked to resign his position as a Senior Associate at an international law firm in New York"), such that the data breach and ensuing events may have plausibly led or contributed to Plaintiff's job and career loss, separate and apart from any publicity arising from this action. As to the

16

latter, the Court concurs in Defendant's analysis that Plaintiff has failed to plead that he suffered losses from the money spent on Defendant's platform for the same reasons discussed supra, Sec. I(A)(1)(b)(v).

Accordingly, this element of the claim is satisfied.

### 2. Bad Faith

For the reasons discussed below, Defendant has failed to meet its burden to show that Plaintiff engaged in bad faith in relation to the proposed amendment.

The party opposing the motion for leave to amend bears the burden of showing bad faith. See Perez Escobar, 342 F.R.D. at 380 (citation omitted); Travelex Currency, 449 F. Supp. 3d at 395 (citation omitted). Defendant does not argue that Plaintiff has proposed the amendment in bad faith and therefore did not meet its burden. See generally ECF No. 50. Accordingly, the Court does not find the proposed amendment to be made in bad faith.

### 3. Undue Delay

For the reasons discussed below, Plaintiff has not unduly delayed proposing the amendment here.

Plaintiff filed this motion, see generally ECF Nos. 45-47, months in advance of the deadline for joinder or amendment of the pleadings set forth in the Scheduling Order entered pursuant to Federal Rule of Civil Procedure 16(b), see 6/18/2025 Order, and less than one month following the issuance of the decision on Defendant's motion to dismiss, see generally ECF No. 41, such that the action was still in the pleading stage and that the motion was not unduly delayed. Defendant does not argue to the contrary. See generally ECF No. 50.

17

### 4. Undue Prejudice

For the reasons discussed below, Defendant has failed to meet its burden to show that undue prejudice in relation to the proposed amendment.

The party opposing the motion for leave to amend bears the burden of showing prejudice. See Perez Escobar, 342 F.R.D. at 380 (citation omitted); Travelex Currency, 449 F. Supp. 3d at 395 (citation omitted); Amaya, 295 F.R.D. at 253 (citations omitted).

Defendant does not argue that Plaintiff has proposed the amendment would result in undue prejudice to Defendant and therefore did not meet its burden. See generally ECF No. 50. Accordingly, the Court does not find the proposed amendment would cause Defendant undue prejudice.

### B. Motion To Supplement Pleading

For the reasons discussed below, Plaintiff's motion to supplement his pleading is granted.

Federal Rule of Civil Procedure 15(d) provides that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The language of Federal Rule of Civil Procedure 15(d) is "plainly permissive," but, "[a]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, [a Rule 15(d)] motion should be freely granted." Nat. Credit Union Admin. Bd. v. U.S. Bank Nat. Ass'n, 898 F.3d 243, 256 (2d Cir. 2018) (citation & quotations omitted).

Plaintiff contends that, since he "filed his original complaint[,] he has suffered severe and ongoing damages, including not only emotional distress, but the loss of his job and career as a New York lawyer." ECF No. 46 at 11 (citing ECF No. 47 ¶¶ 123-25). Plaintiff also contends

18

that Defendant's "bad conduct has continued in the form of asserting repeated false (and ever-changing) stories regarding the October 2023 hack into Plaintiff's DraftKings account." Id. (citing ECF No. 47 ¶¶ 110-116). These allegations relate to Plaintiff's current and new claims. The allegations concern conduct spanning mid to late 2024, see ECF No. 47 ¶¶ 112-14, 123-25, and Plaintiff raised his desire to file a new pleading with the Court as early as late 2024, see 11/7/2024 Order, such that Plaintiff did not unduly delay in seeking to add these new allegations. Defendant notably does not oppose Plaintiff's motion to supplement his pleading. See generally ECF No. 50. The Court's reasoning above as to undue delay, bad faith, undue prejudice and futility with regard to Plaintiff's motion to amend the pleading also applies to Plaintiff's motion to supplement the pleading, such that Plaintiff is permitted to supplement his pleading.

## II. CONCLUSION

For the reasons discussed, Plaintiff's motion is granted. The amended and supplemental pleading, see ECF No. 47 at 7-38, is deemed to be the operative pleading. Defendant must answer or otherwise respond to the operative pleading by March 6, 2026.

Dated: Brooklyn, New York
      February 13, 2026

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge