UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                              :

STEVEN JACOBS,                              :

                                  :

                       Plaintiff,          :                  **ORDER**

                                  :

                -against-                 :         24 Civ. 3077 (NCM) (VMS)

                                  :

DRAFTKINGS INC.,                  :

                                  :

                       Defendant.        :

                                  :

------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Steven Jacobs ("Plaintiff") and Defendant DraftKings Inc. ("Defendant") filed

motions for various discovery-related relief.

**I.        Plaintiff's Motions**

The Court addresses Plaintiff's requests below, as to both deposition-related and written

discovery-related.

         **A.       Plaintiff's Deposition-related Requests**

The Court addresses Plaintiff's deposition-related requests below.

                **1.       To Compel Compliance With Deposition Notices for Johnny Avello, Jason Robins, Hayden Metz And Casey Vitanza (ECF No. 69)**

Plaintiff seeks to compel Defendant's compliance with deposition notices for Johnny

Avello, Director, Sportsbook Operations; Jason Robins, Chief Executive Officer; Hayden Metz,

Vice President, Loyalty & VIP Growth; and Casey Vitanza, Lead, Risk Operations.  See ECF

No. 69 at 2; ECF No. 71 at 1.

Defendant seeks the application of the "apex doctrine," precluding any "depositions of

senior executives who lack unique, first-hand knowledge."  ECF No. 71 at 3 (citations omitted).

In support of such request, Defendant offers that "Plaintiff has relied on pure speculation and offered absolutely no evidence, aside from his 'upper echelon' allegation which we now know to be a lie, that any DraftKings employee conspired against Plaintiff." Id. Rather, Defendant offers that Plaintiff communicated with Spanky via text messages, which reveal that he requested that Spanky "'poke around the upper echelon of DK' to help remove a 'barricade' on his account and volunteered his username and balance to facilitate that request." Id. (emphasis in original).

Courts view "requests to depose high-ranking corporate . . . officials, who are sometimes referred to as 'apex witnesses,'" with "special scrutiny," given "the possibility of business disruption and the potential for harassment." Russell Reynolds Assocs. v. Usina, No. 23 Civ. 2369 (JHR), 2023 WL 3436079, at *1 (S.D.N.Y. May 13, 2023) (citation & quotations omitted). Nonetheless, "because principles relating to apex witnesses are in tension with the broad availability of discovery, it is important to excuse a witness from giving testimony only in compelling circumstances." Id. (citations & quotations omitted). As such, apex depositions are generally permitted where "the executive has first-hand knowledge of important facts and/or when there are not other, less intrusive means to obtain the information." GMO Gamecenter USA, Inc. v. Whinstone US, Corp., No. 22 Civ. 5974 (JPC) (KHP), 2024 WL 3833882, at *4 (S.D.N.Y. Aug. 14, 2024). In accordance with such framework, the party seeking to avoid an apex deposition "bears the burden of showing good cause for why the deposition should not be allowed." Id. (citation omitted).

Plaintiff's request is granted in part and denied in part. The second amended and supplemental complaint (the "SAC") includes allegations as to the course of events leading to Plaintiff's claims that specifically involve Johnny Avello and Jason Robins, see, e.g., ECF No. 103 ¶¶ 29, 35, 40 120, & 143 (noting the "close relationship" among Johnny Avello, Jason

Robins, Defendant and Spanky and the attendance of Johnny Avello and Jason Robins at the conference, during which they allegedly revealed Plaintiff's information to Spanky), as well as Casey Vitanza, see, e.g., id. ¶¶ 93 & 111 (noting that Casey Vitanza "added a private note to the email chain (that was not visible to Plaintiff) stating 'Account Compromise found,'" while Defendant was reassuring Plaintiff "that "'all activity' was 'valid'"). Further, in its interrogatory responses, Defendant lists Johnny Avello as an employee likely to have knowledge about the allegations in the SAC. See ECF No. 69-1 at 33. In view of the foregoing, Plaintiff may depose Johnny Avello and Jason Robins, each for up to the seven hours permitted by the Federal Rules of Civil Procedure, as well as Casey Vitanza, only for three-and-a-half hours due to her alleged limited involvement in the events at issue, as these three individuals may have unique information that is unobtainable from other sources. Plaintiff may not depose Hayden Metz, as Plaintiff does not allege that he was specifically involved in the events at issue, which would render his deposition of the type that the apex doctrine is intended to preclude.

Plaintiff's request is accordingly granted in part and denied in part.

### 2. To Strike The Deposition Testimony of Herbert Smith Freehills Kramer LLP And Attorney Michael Jones (ECF No. 79)

Plaintiff seeks to strike the deposition testimony of Herbert Smith Freehills Kramer LLP, the law firm that formerly employed him, as well as of Michael Jones, one of the law firm's attorneys. See generally ECF No. 79. Plaintiff states that his counsel "unexpectedly received an email from Defendants' counsel" containing documents from the law firm and Michael Jones on a Saturday morning at 7:00 AM, in advance of the Monday depositions. Id. at 1-2. Because Plaintiff's counsel experienced difficulties with accessing the documents, of which he had informed Defendant's counsel, after the first witness was sworn in on Monday morning, Plaintiff's counsel "formally stated that he was suspending the deposition under Rule

30(d)(3)(A)" and, when Defendant's counsel continued with the deposition, voluntarily departed from the remote depositions.  Id. at 2-3.  Plaintiff described related technological, timing and other issues purportedly caused by Defendant.  See generally id.

Defendant offers that the production at issue was received by Defendant's counsel from the subpoenaed non-parties after business hours on Friday evening and consisted of only 67 documents.  See ECF No. 83 at 1.  Defendant notes that Plaintiff's counsel did not attempt to access the production until Saturday evening and that he had previously experienced similar technological issues but was able to resolve them.  Id.  Defendant argues that Plaintiff's counsel's purported attempt to unilaterally suspend the first deposition of the law firm was ineffective because Federal Rule of Civil Procedure 30(d)(3)(A) only permits suspension when a deposition "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party," rather than "authoriz[ing] preemptive termination based on a preference for more preparation time," and that Plaintiff's counsel did not similarly invoke Federal Rule of Civil Procedure 30(d)(3)(A) with regard to the second deposition of Michael Jones.  Id. at 3 (citation & quotations omitted).

Federal Rule of Civil Procedure 30(d)(3)(A) provides that, "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party" and that, "[i]f the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order."  The party seeking a protective order "has the burden of proving that the examination was being conducted in bad faith or in such a manner as to unreasonably annoy, embarrass, or oppress the deponent or a party" and "needs to clarify the record to the greatest extent possible so that the court, which has not

4

attended the deposition and has not observed its atmosphere, can reach an informed conclusion" as to whether the "opponent's question is so oppressive as to require judicial intervention." Cornelius v. Luna, No. 3:20 Civ. 1047 (JCH), 2023 WL 3071414, at *3 (D. Conn. Apr. 25, 2023) (emphasis in original) (citations & quotations omitted). The aforementioned power "has been and should be exercised sparingly lest it cripple the broad discovery intended by the Federal Rules." Sacerdote v. Cammack LaRhette Advisors, 24 Civ. 3229 (AT) (VF), 2025 WL 893720, at *2 (S.D.N.Y. Mar. 24, 2025) (citations & quotations omitted).

Plaintiff's request is denied. Upon receipt of a supplemental production from subpoenaed non-parties shortly in advance of the related depositions, counsel were expected to promptly attempt to access the production, expeditiously troubleshoot any technological or logistical issues, and act reasonably in charting the best course forward. Plaintiff's counsel does not appear to have done so here. Plaintiff's counsel did not make a detailed record of the alleged issues at the time, and the parties did not attempt to seek a court order. Plaintiff's counsel's voluntary departure from the remote depositions, in particular, due to his aforementioned technological issues was unreasonable. Such issues are not a basis for invoking Federal Rule of Civil Procedure 30(d)(3)(A), such that Plaintiff's counsel was not entitled to unilaterally terminate either or both depositions. Moreover, Plaintiff does not identify any testimony that was inappropriately elicited or that would have been developed differently had he been present or had he accessed the documents sooner. Plaintiff therefore did not suffer any harm from the lack of counsel's participation. In view of the foregoing, the Court declines to award any relief to Plaintiff as to the depositions.

**3.** **To Compel The Deposition Testimony Of Defendant's Rule 30(b)(6) Witness (ECF No. 100)**

Plaintiff seeks to compel the deposition of a Rule 30(b)(6) witness "fully prepared to testify on all noticed deposition topics, without limitation by DraftKings' unilateral written objections." ECF No. 100 at 1. Plaintiff noticed the deposition a few weeks in advance, and, four days before the deposition, Defendant served objections to the noticed topics, noting that Defendant's witness would only testify to those topics, to which Plaintiff responded the day before the noticed deposition. Id. at 2. Plaintiff takes issue with Defendant's overarching objections, which purportedly limit the testimony to "general" and "non-technical" information, to the time period beginning in 2022, and to exclude allegedly privileged information that, according to Plaintiff, is actually non-privileged factual information. Id. at 3-4. Plaintiff additionally takes issue with Defendant's purported refusal to designate a witness to testify as to a particular press release issued by Defendant and as to Defendant's document retention policies. See id.

Defendant offers that Plaintiff failed to comply with the requirement of Federal Rule of Civil Procedure 30(b)(6) to "confer in good faith about the matters for examination" either "[b]efore or promptly after the notice or subpoena is served." See ECF No. 101 at 1. After the deposition began, Plaintiff adjourned it "when DraftKings declined to withdraw its objections wholesale." Id. at 2 (citation & footnote omitted). As to its overarching objections, Defendant counters that the purported temporal limitation raised by Plaintiff is drawn from "isolated testimony in which Mr. DiChiaro, without the written responses in front of him, described his preparation as relating to Mr. Jacobs from 2022 forward," which "occurred only after Plaintiff repeatedly demanded that Mr. DiChiaro recite the scope of DraftKings' objections from memory," and that its objections "preserve privilege only as to attorney communications, legal

6

advice, mental impressions, and counsel-directed analyses, while permitting non-privileged factual testimony reflected in ordinary-course materials," a dispute as to which has not yet materialized due to "Plaintiff's failure to engage in a deposition" and decision not to ask "a single substantive question." Id. at 2, 4. As to the objections to the specific topics with which Plaintiff takes issue, Defendant argues that, as to the press release issued by Defendant, "[t]he fact that DraftKings issued a public statement does not waive attorney-client privilege or work product protection as to internal legal advice or counsel-directed analysis developed in preparing it." Id. at 2 (citations omitted). As to Defendant's document retention policies, Defendant "stated that it had implemented a litigation hold, was unaware of document destruction, and was willing to meet and confer regarding the scope of any additional non-privileged testimony." Id. (citations omitted).

Federal Rule of Civil Procedure 30(b)(6) provides that, "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." This requirement "was imposed to respond to problems that have arisen in connection with Rule 30(b)(6) topics," namely "[l]engthy or ambiguously worded lists of matters for examination" leading "to inadequately prepared witnesses and disagreements over whether the deponent should be required to respond to topics not adequately expressed in the notice." 9 James Wm. Moore et al., Moore's Federal Practice § 30.25(2A) (3d ed. 2026) (citations omitted). Then, "[i]f a party has an objection to the areas of inquiry, that party must file a motion for a protective order," as "[i]t is improper to simply lodge objections and instruct the designated witness not to answer questions that the corporation deems objectionable." Id. § 30.25(2) (footnote omitted).

Plaintiff's request is granted in part and denied in part. Evident from the parties' submissions is that neither party complied with its obligations in preparing for the deposition of Defendant's 30(b)(6) witness. Federal Rule of Civil Procedure 30(b)(6) obligates both parties to confer before or promptly after service of the deposition notice, but, here, neither party did so until a few days prior to the deposition, which was clearly insufficient time to confer meaningfully and to attempt to reach a resolution of disputes as to the noticed topics or, if unable to do so, seek relief from the Court. Then, absent meaningful communications, Defendant acted unreasonably in instructing its witness to limit its testimony to the unobjected-to topics, other than as to privileged information, and Plaintiff acted unreasonably in preemptively concluding the deposition without asking any substantive questions of the witness, including those which might have created a sufficient record for the privilege review. By May 20, 2026, the parties must meaningfully confer, via videoconference or in person, for no less than four hours as to the noticed topics; the conference may conclude sooner only if the parties mutually agree that all disputes have been resolved. By May 22, 2026, the parties must file a joint letter outlining their respective positions as to any remaining disputes, or informing the Court that there are no disputes remaining. The Court expects both parties to act reasonably in complying with this Order. The Court declines to order Defendant to produce a witness prepared to testify on all deposition topics currently noticed, without objection, as requested by Plaintiff, as doing so would run contrary to the framework set forth by Federal Rule of Civil Procedure 30(b)(6), particularly where the parties have yet to confer meaningfully as to the noticed topics.

Plaintiff's request is accordingly granted in part and denied in part.[1]

---

[1] This ruling resolves the issue as to the Rule 30(b)(6) witness subsequently raised as well. See ECF No. 110 (SEALED) at 2-3. The Court expects the parties' discussion to encompass their

### B. Plaintiff's Written Discovery-related Requests

The Court addresses Plaintiff's written discovery-related requests below.

As a general matter, Plaintiff asks this Court to order Defendant to add to its email and related searches at least seven additional identified custodians, plus an unidentified number of all attendees of three conferences and all members of a purported hack investigation team, none of whom appears to have had meaningful involvement with the facts at issue. ECF No. 70 at 4. Defendant has already conducted comprehensive searches for nineteen custodians directly associated with Plaintiff's allegations, ECF No. 72 at 3, such that ordering further searches of additional custodians would be unreasonable and unwarranted.

As to the searches conducted, Defendant apparently self-imposed various date restrictions, ECF No. 70 at 4, which it claims to have based upon different timelines of events, ECF No. 72 at 3. Plaintiff requested that the custodians' accounts be searched from February 1, 2022, which is the approximate start date for Plaintiff's association with Defendant, through the present. ECF No. 70 at 4. The timeframe of February 1, 2022, through May 11, 2026, is reasonable, and Defendant is directed to perform the searches for its nineteen custodians during such timeframe and produce any additional, non-privileged documents by May 29, 2026.

---

apparent dispute as to whether a Rule 30(b)(6) witness was properly instructed not to answer on the basis of privilege. See ECF No. 112 at 5. The Court temporarily sealed Plaintiff's filing, per Plaintiff's request, pending the parties' meet-and-confer as to the propriety of sealing, as it contains documents that Defendant designated as confidential. See ECF No. 111 at 2. The parties are to file the appropriate sealing motion, or a joint letter stating that they mutually agree that sealing of the filing is unwarranted, by May 22, 2026.

Plaintiff alleges that Defendant purportedly searched only the email accounts for the custodians and did not include additional media and messaging platforms. ECF No. 70 at 4. To the extent that this is an accurate representation of Defendant's search process, and such media and messaging platforms were used from February 1, 2022, through May 11, 2026, Defendant is directed to perform the searches for its nineteen custodians across all of its internal messaging platforms and produce any additional, non-privileged documents by May 29, 2026.

Plaintiff makes requests as to Defendant's responses to various document requests and interrogatories. As to many of these requests, the Court agrees with Plaintiff that they seek documents reasonably related to the disputes in issue.

Plaintiff seeks a response to request 3, which seeks all communications between Defendant and Spanky. ECF No. 70-1 at 90. Defendant agreed to produce all such non-privileged documents regarding Plaintiff and regarding Plaintiff's account. Id. This is an appropriate limitation, such that Plaintiff's request is denied.

Plaintiff seeks a response to request 4, which seeks all communications between Defendant and Oscar Jones relating to Plaintiff and Plaintiff's account. ECF No. 70-1 at 90. Defendant responded that it was unable to "identify a specific customer named Oscar Jones in its systems without additional identifiable information." Id. Defendant therefore did not produce responsive documents. Id. If Plaintiff wishes for Defendant to produce responsive documents, by May 22, 2026, Plaintiff must provide information sufficient to identify the individual, and, by May 29, 2026, Defendant must produce non-privileged documents responsive to such request. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 10, which seeks all documents and communications concerning any investigation conducted by Defendant as to Plaintiff and his account with Defendant. Id. at 91. Defendant provided such documents concerning the alleged provision of information to Spanky and the alleged hack of Plaintiff's account. Id. To the extent that they exist, Defendant must produce any additional, non-privileged documents responsive to such request by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 11, which seeks all documents and communications between Di Chiaro and any of Defendant's employees concerning "the extent of the information Di Chiaro was permitted to provide to Plaintiff." Id. at 91. Defendant provided such documents as to Di Chiaro's communications regarding Plaintiff's allegations related to Spanky. Id. This is an appropriate limitation, such that Plaintiff's request is denied.

Plaintiff seeks a response to request 13, which seeks documents "sufficient to show how Plaintiff's Registered Email Address was changed to 'Jacobs2207@outlook.com.'" Id. at 92. Defendant provided such non-privileged documents to Plaintiff, id., such that Plaintiff's request is denied as moot.

Plaintiff seeks a response to request 14, which seeks documents sufficient to show how the aforementioned request to change Plaintiff's email address with Defendant was made and approved. Id. at 92. Defendant only produced the documents responsive to request 13, and no additional documents. Id. Such information is discoverable, in relation to Plaintiff's claim about unauthorized account access, and Defendant must produce non-privileged documents responsive to such requests by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 15, which seeks document sufficient to show Defendant's process for customers to change their registered email addresses and, if different from the process communicated to Plaintiff, sufficient to show why the process was "incorrectly communicated" to Plaintiff.  Id.  Defendant did not produce responsive documents.  Id. Documents responsive to the first portion of the request are discoverable, in relation to Plaintiff's claim about unauthorized account access, and Defendant must produce non-privileged documents responsive to such requests by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.  Discovery of documents as to a potential incorrect communication to Plaintiff need not be produced.

Plaintiff seeks a response to request 16, which seeks all documents and communications concerning Jacobs2207@outlook.com.  Id. at 93.  Defendant did not produce responsive documents other than those responsive to request 13.  Id.  Documents responsive to the request are discoverable, in relation to Plaintiff's claim about unauthorized account access, and Defendant must produce non-privileged documents responsive to such requests by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 17, which seeks all documents and communications concerning any investigation of the change in Plaintiff's registered email address.  Id.  Defendant agreed to produce such non-privileged documents, such that the request is denied as moot.

Plaintiff seeks a response to request 18, which seeks all documents and communications concerning the information that Defendant was willing, or unwilling, to provide to Plaintiff after the change in his registered email address.  Id.  Defendant did not produce responsive documents.  Id.  To the extent that any documents are responsive to this request that were not

already produced in response to other requests, Defendant must produce non-privileged documents responsive to such requests by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 20, which seeks all documents and communications concerning a particular email from Plaintiff to Stanton Dodge. Id. at 94. Defendant responded that, "[t]o the extent any responsive documents exist, they are protected from disclosure by the attorney-client privilege." Id. To the extent not already done, Defendant must produce a privilege log for any responsive, but privileged, documents not produced.

Plaintiff seeks a response to request 22, which seeks all documents and communications concerning this lawsuit and Plaintiff's statements to Defendant that he would be bringing a lawsuit. Id. Defendant responded that, "[t]o the extent any responsive documents exist, they are protected from disclosure by the attorney-client privilege and/or work product doctrine." Id. To the extent not already done, Defendant must produce a compliant privilege log for any responsive, but privileged, documents not produced. Defendant also must produce non-privileged documents responsive to such request, which would include Plaintiff's statements to Defendant, by May 29, 2026.

Plaintiff seeks a response to request 3(2), which seeks all documents and communications concerning Spanky. Id. Defendant produced all non-privileged, responsive documents that are not publicly available or in Plaintiff's possession. Id. Defendant must also produce any such publicly available documents and documents in Plaintiff's possession by May 29, 2026.

Plaintiff seeks a response to request 5(2), which seeks documents sufficient to identify Defendant's officers, directors and employees who attended a certain 2023 conference. Id. at 95. Defendant responded that it already provided a list of its employees who attended such

conference, per its records, in an interrogatory response.  Id.  Nonetheless, Defendant also must produce non-privileged documents responsive to such request by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 6(2), which seeks documents sufficient to identify the schedules and activities of Defendant's officers, directors and employees who attended a certain 2023 conference.  Id.  Defendant did not produce documents in response to this request. Id.  Defendant must produce non-privileged documents responsive to such request, limited to any such schedules and activities containing meetings with Spanky, by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 9(2), which seeks all documents and communications concerning Defendant's chief executive officer's decision to send its officers, directors, or employees to another conference hosted by Spanky during any of four years.  Id.  Defendant did not produce documents in response to this request.  Id.  Defendant must produce non-privileged documents responsive to such request, limited to documents pertaining to those concerning Defendant's relationship with Spanky, by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to 10(2), which seeks all documents and communications concerning the conference hosted by Spanky.  Id. at 96.  Defendant did not produce documents in response to this request.  Id.  This request is significantly overbroad, such that Plaintiff's request is denied.

Plaintiff seeks a response to 13(2), which seeks "[a]ll documents and communications concerning DraftKings' decision to lie and/or misrepresent material facts to Jacobs or any other VIP customer."  Id.  Defendant did not produce documents in response to this request.  Id.  This

request is inflammatory, such that Defendant need not respond.  As such, Plaintiff's request is denied.

Plaintiff seeks a response to request 14(2), which seeks all documents and communications as to "Michael Rybczynski's desire to 'avoid [allowing Jacobs] in any spaces with other players.'"  Id.  Defendant did not produce documents in response to this request.  Id. Defendant must produce non-privileged documents responsive to such request, as it seeks documents relating to Plaintiff's claim that he was improperly denied VIP "perks," by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 17(2), which seeks documents sufficient to show Defendant's "counsel's factual basis for falsely telling Plaintiff in or around June 2024 that 'discovery would show' that whoever hacked Plaintiff's account did so from Plaintiff's IP address."  Id.  Defendant did not produce documents in response to this request.  Id.  Without endorsing any suggestion that counsel lied, Defendant must produce any documents related to identifying the source of the hac of Plaintiff's account.  This is similar to the response required to request 18(2).  As such, Plaintiff's request is granted in part and denied in part.

Plaintiff seeks a response to request 18(2), which seeks documents and communications concerning the alleged hack investigated by Ivaylo Nikov.  Id. at 97.  Defendant did not produce documents in response to this request.  Id.  Defendant must produce non-privileged documents responsive to such request, as it seeks documents relating to Plaintiff's claim that his account was accessed in an unauthorized manner, by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 19(2), which seeks documents sufficient to show Defendant's policies as to hacks and breaches of customer data. Defendant did not produce documents in response to this request. Id. Defendant must produce non-privileged documents responsive to such request, as it seeks documents relating to Plaintiff's claim that his account was accessed in an unauthorized manner and would shed light on whether Defendant complied with its own policies in responding to such alleged hack, by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 20(2), which seeks documents "sufficient to show DraftKings' policies concerning honesty with customers." Id. Defendant did not produce documents in response to this request. Id. This request is suggestive and inflammatory, and Defendant need not respond. As such, Plaintiff's request is denied.

Plaintiff seeks a response to request 21(2), which seeks documents sufficient to show training received by VIP hosts in New York as to interactions with VIP customers during the relevant time period. Defendant did not produce documents in response to this request. Id. Defendant must produce non-privileged documents responsive to such request, as the documents sought may shed light on whether the conduct of Plaintiff's VIP hosts comported with applicable policies, by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 22(2), which seeks "[d]ocuments sufficient to show DraftKings' factual basis for its press release on or around June 25, 2024 concerning Jacobs, as described in paragraph 123 of the Complaint (the 'Press Release') (wherein DraftKings claimed falsely that Jacobs'[s] complaint is 'full of inaccuracies and baseless allegations,' that DraftKings 'has found no evidence of anyone (here) providing plaintiff's information to a third-

party,' and that DraftKings 'has not uncovered any improper activity by a DraftKings employee . . . 'related to these allegations)." Id. at 98. Defendant responded that all responsive documents were privileged. Id. To the extent Defendant has not already done so, it must produce a privilege log for any responsive documents not produced.

Plaintiff seeks a response to request 23(2), which seeks all documents and communications concerning the aforementioned press release. Id. Defendant responded that all responsive documents were privileged. Id. To the extent Defendant has not already done so, it must produce a privilege log for any responsive documents not produced.

Plaintiff seeks a response to request 24(2), which seeks all documents and communications concerning the departure of Taylor O'Brien, one of Plaintiff's VIP hosts, from Defendant. Id. Defendant did not produce documents in response to the request. Id. Defendant must produce non-privileged documents responsive to such request, only to the extent that any such documents reflect that the departure related to Plaintiff, by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff seeks a response to request 25(2), which seeks all documents and communications concerning Joe DiChiaro's promotion with Defendant. Id. Defendant did not produce documents in response to the request. Id. Defendant must produce non-privileged documents responsive to such request, only to the extent that any such documents reflect that the promotion related to Plaintiff, by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

The compliant, updated privilege log or logs must be produced by May 29, 2026.

## II.   Defendant's Requests

The Court addresses Defendant's requests below, which are relate to documentary discovery.

### A.   To Compel Responses To Defendant's First Set Of Discovery Requests (ECF No. 80)

Defendant requests that the Court order Plaintiff to "produce complete, non-duplicative documents" in response to its first set of requests for production; "serve full and verified responses" to Defendant's first set of interrogatories; and "serve full and verified responses" to Defendant's first set of requests for admission.  ECF No. 80 at 1.

#### 1.   Documents

Defendant preliminarily raises some overarching issues with Plaintiff's productions.

Defendant first contends that "third-party discovery [has made] . . . clear that Plaintiff has failed to search his email accounts for relevant and responsive documents."  Id. at 3.  In particular, Plaintiff "has produced documents only from stevenbjacobs@gmail.com" but has "used, but failed to produce emails from, mayomi.o.sanchez@gmail.com and iceboxbatcave@gmail.com, both of which were his official DraftKings account email address at various points."  Id.  Defendant supported its argument by reference to Plaintiff's deposition testimony, in which he admitted to failing to comprehensively search two email accounts for responsive documents and communications, despite stating that he used such accounts for activities related to Defendant.  See ECF No. 97-2 at 2 (SEALED) (citation omitted).[2]  Plaintiff

---

[2] Defendant filed this document, accompanied by a motion to seal, as Plaintiff contends that the attached excerpts from his deposition transcript "are confidential in whole or in part under the parties' protective order," which defines
> confidential discovery material as 'any information that the Producing Party
> believes in good faith: (i) contains or comprises proprietary business, personal,

responds that these email accounts "were 'burner' accounts used exclusively for DraftKings and other sportsbooks" and "have been searched and contain no responsive, non-privileged documents that DraftKings does not already possess." ECF No. 80 at 2. The contention that Defendant already possesses certain documents does not excuse Plaintiff from his obligation to produce them, particularly given that accepting such contention may deprive Defendant of unique metadata attached to communications. Plaintiff therefore must search his mayomi.o.sanchez@gmail.com and iceboxbatcave@gmail.com accounts and produce non-privileged documents responsive to Defendant's requests by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

---

private, or confidential information of any party; (ii) contains or comprises commercially sensitive information that could cause a Party or any Non-Party competitive harm or otherwise be commercially injurious; (iii) should be protected from disclosure to protect the privacy rights of a third party or any third party; (iv) is covered by any nondisclosure agreement; or (v) any other information or compilation of information that its [sic] not generally known to competitors or the public, which any party considers to be confidential and/or proprietary.'

ECF No. 97 at 1 (SEALED) (citation omitted). Defendant "disputes that the transcript excerpts at issue meet this definition," but it submitted the filing under seal "to comply with its obligations under the Protective Order." Id. (SEALED). In response, Plaintiff only offers that he believes in good faith that the material "(i) contains proprietary, personal, private, or confidential information; (ii) should be protected to preserve privacy rights; and (iii) is covered by a nondisclosure agreement" and "actively puts Mr. Jacobs in further danger." ECF No. 99 at 3. The Court has reviewed the excerpts from Plaintiff's deposition transcript attached to Defendant's filing, which consist of testimony about how Plaintiff performed searches of documents and communications to produce to Defendant in this action, as well as facts that speak to the core of the parties' dispute in this action, including Plaintiff's involvement with Oscar Jones and Spanky in relation to Defendant and the alleged extortion. Plaintiff's explanation is insufficient to warrant sealing of this information under applicable precedent. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006) (explaining that sealing of documents may implicate both the common law right of public access to judicial documents and the qualified First Amendment right of public access to judicial documents (citations omitted)). For these reasons, the motion to seal is denied, and the Court will unseal ECF No. 97 and its attachments contemporaneously with the issuance of this Order.

Defendant next argues that Plaintiff's production of text messages "is both incomplete and unreliable," as "the screenshots he produced . . . suffer from obvious technical deficiencies, such as blurred, cropped, and out-of-sequence message bubbles," and are missing certain messages." ECF No. 80 at 4. Defendant therefore requests forensic imaging of Plaintiff's phone. See id. Defendant also rests on Plaintiff's deposition testimony, in which he admitted to withholding communications with Oscar Jones "concerning his joint venture to wager other people's funds through his DraftKings account" as purportedly irrelevant and likely to cause reputational harm. See ECF No. 97-2 at 2 (SEALED) (citation omitted).[3] Plaintiff takes the position that whether he "was betting his own money or was 'staked' by someone else is legally irrelevant to whether DraftKings owed him fiduciary duties and whether it breached those duties by leaking his information to a criminal." ECF No. 99 at 2. A forensic collection from Plaintiff's phone is unwarranted at this time, but Plaintiff is directed to provide the requested communications with Oscar Jones in complete and legible format, which are relevant to Defendant's defense as to the source of the funds in Plaintiff's account and the impetus for the alleged threats made to Plaintiff, by May 29, 2026.

As to Defendant's specific discovery requests, Defendant first argues that "Plaintiff represented that he would produce documents responsive to numerous requests, including RFPs 1-11, 15-19, 21-26, and 32-47"; made an initial production that "consisted almost entirely of irrelevant job-search correspondence and a handful of incomplete text-message screenshots"; provided "repeated assurances during meet-and-confer discussions"; and still has "not produced the bulk of documents responsive to the RFPs he agreed to satisfy." Id. at 2.

_____

[3] See supra, n.2.

Plaintiff responds that Defendant purportedly "concedes that the 'bulk' of these RFPS concern Plaintiff's 'purported exchanges with DraftKings employee Joseph Di Chiaro,'" which "communications are with DraftKings" and were produced to Plaintiff, such that "[t]here is no legitimate basis to demand that Plaintiff reproduce DraftKings' own documents" because doing so would be "unreasonably cumulative and duplicative." ECF No. 85 at 1. Such an objection is unconvincing and does not excuse Plaintiff from his discovery obligations. It is also potentially inaccurate, given that the metadata attached to such communications may be different from Plaintiff's side and Defendant's side. Plaintiff therefore must produce non-privileged documents responsive to these requests by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Defendant next contends that "Plaintiff continues to refuse to search for or produce documents responsive to . . . RFPs" 12-13, 20, and 27-31, based on "unsupported assertions of burden and irrelevance," which seek documents as to "[m]oney deposited in, withdrawn from, or otherwise associated with his DraftKings account" (12); "[i]dentification of any person who gave or loaned him funds to place wagers on DraftKings' Sportsbook" (13); "[c]ommunications with any person who gave or loaned him such funds" (14); "[c]ommunications concerning his claim that Spanky 'believed he was entitled to any funds' in his account" (20); "[n]on-privileged documents concerning Jones v. Jacobs and Jacobs v. Bronson" (27 and 28); "[n]on-privileged documents, including social-media or instant-messaging content, concerning this action" (29); [d]ocuments concerning any other legal actions or litigation he has been involved in" (30); and "[d]ocuments concerning any threatened or contemplated legal actions or litigation" (31). ECF No. 80 at 2-3.

Plaintiff responds that the financial information sought "is unrelated to any claim or defense in this case." ECF No. 85 at 2. Plaintiff's contention is inaccurate, given Defendant's position that "Plaintiff voluntarily provided his account name and purported approximate balance" to Spanky and requested his assistance in dealing with Defendant. ECF No. 74 at 5 (emphasis in original). Defendant's request as to these items is therefore granted, and Plaintiff therefore must produce all responsive, non-privileged documents responsive to requests 12-14 and 20 by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff further responds that seeking "documents relating to 'any other legal actions' Plaintiff has been involved in . . . is an effort to dredge up unrelated personal matters to embarrass Plaintiff" and that, particularly with regard to Jacobs v. Bronson, the action "involved a 2016 promissory note and was litigated in 2020" and has "no relevance to this tort action." ECF No. 85 at 2. Defendant has not made any showing as to why documents concerning Jones v. Jacobs, Jacobs v. Bronson, or other legal actions involving Plaintiff or contemplated by Plaintiff are relevant here. Defendant's requests 27-28 and 30-31 are therefore denied.

Plaintiff has not opposed Defendant's request with regard to request 29, seeking non-privileged documents concerning this action. Defendant's request as to this item is therefore granted, and Plaintiff therefore must produce non-privileged documents responsive to request 19 by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

A compliant privilege log must be produced by May 29, 2026.

### 2. Interrogatories

Defendant seeks relief as to Plaintiff's responses to the following interrogatories: "damages from the alleged 'hack,'" to which "Plaintiff provided a generalized narrative lifted from his pleadings rather than a calculation or factual basis" (1); "damages from alleged misrepresentations," to which Plaintiff "repeat[ed] conclusory statements without specifics" (5); "identif[ication of [DraftKings personnel who made alleged misrepresentations," to which "Plaintiff referred generically to "DraftKings personnel" without providing any "names, titles, or statements" (4); interrogatories 6-8, 11, and 15, the substance of which is unspecified, to which Plaintiff provided "vague, inconsistent, or wholly evasive" responses (6-8, 11, and 15); and "basic facts about alleged employee misconduct and wagers placed on behalf of others," which "Plaintiff refused to answer entirely" (12 and 15). ECF No. 80 at 4. This request is effectively unopposed, as Plaintiff's only response is that Defendant's request "is based on mischaracterizations," which Plaintiff does not specify; that "Plaintiff's responses are proper and complete subject to his objections"; and, unrelatedly, that the employee who verified Defendant's interrogatories apparently "did not recall signing the verification." ECF No. 85 at 3-4. Defendant's request is therefore granted, and Plaintiff must respond to the aforementioned interrogatories by May 29, 2026.

### 3. Requests for Admission

Defendant argues that "Plaintiff refused to admit or deny RFA No. 7, which asked him to confirm whether he received funds from others, including Spanky and Jones, that were later deposited into his DraftKings account for wagering," which is "fundamental to the case" because "Plaintiff alleges that Spanky and Jones 'believed they were entitled' to his DraftKings funds and that DraftKings somehow facilitated their access." ECF No. 80 at 5. Plaintiff does not oppose

the request that his response thereto be compelled.  Defendant's request is therefore granted, and

Plaintiff must respond to the aforementioned request for admission by May 29, 2026.  Plaintiff is

reminded that, under the Federal Rules, a failure to respond will be deemed an admission.  See

Fed. R. Civ. P. 36(a)(3).

### B.    To Compel Responses To Defendant's Second Set Of Discovery Requests (ECF No. 82)[4, 5]

Defendant requests that the Court order Plaintiff to "serve complete and verified

responses to the [s]econd [d]iscovery [r]equests," to "produce all responsive documents," and to

"deem Plaintiff's objections waived and the FRAs admitted, or, alternatively, compel Plaintiff to

serve full and verified responses to all RFAs."  ECF No. 82 at 1.

### 1.    Documents

Defendant offers that Plaintiff responded to certain of Defendant's requests for

production with a "complete refusal to produce responsive materials."  ECF No. 82 at 3.  The

requests to which Defendant seeks responses are those seeking production of "[d]ocuments

concerning Plaintiff's claim that DraftKings owed him fiduciary duties" (48), "[c]ommunications

evidencing a 'relationship of friendship and trust' with his VIP hosts" (50), "[d]ocuments

showing the amounts wagered or lost as a result of alleged misrepresentations" (61),

"[d]ocuments supporting the computation of claimed damages" (58, 64, 69, and 74), and

"[c]ommunications reflecting Plaintiff's intent to continue wagering despite alleged threats" (63

---

[4] The Court rejects Plaintiff's argument that Defendant's second set of discovery requests were untimely because they were not served by the deadline to serve initial document requests and interrogatories.  See ECF No. 82 at 2; ECF No. 86 at 2-3.

[5] Defendant contends that Plaintiff's discovery responses "were unsigned and unverified."  ECF No. 82 at 2.  Plaintiff is reminded of the need to comply with the Federal Rules of Civil Procedure and this Court's Local Civil Rules in responding to discovery requests.

and 66).  See id. at 3-4.  Each of the aforementioned requests are relevant to Plaintiff's claims and require responses by May 29, 2026.

Plaintiff responds that requests 48 and 50 are impermissible "[c]ontention RFPs" but does not otherwise substantively oppose Defendant's request that responses thereto be compelled. ECF No. 86 at 4.  This is not a valid basis for opposing the request, and, as such, Plaintiff must produce non-privileged documents responsive to these requests by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff responds that requests 58, 61, 64, 69 and 74 solicit documents as to damages computation information, which is "attorney analysis" that is privileged.  ECF No. 86 at 4.  The Court rejects Plaintiff's argument, as, even if Defendant had not served any damages-related discovery requests, pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Plaintiff was obligated to provide Defendant with

> a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Plaintiff must produce non-privileged documents responsive to these requests by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Plaintiff's responds that requests 63 and 66 "seek docs on subjective 'intent' (RFP 63) or 'explanations' for conduct (FRP 66)," to which "Plaintiff properly objected that[,] to the extent any such analyses exist (e.g., in communications with counsel or investigators), they are protected by privilege or work product."  Plaintiff must produce non-privileged documents responsive to these requests by May 29, 2026.  For any

discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

### 2. Interrogatories

Defendant contends that Plaintiff "refus[ed] to provide substantive responses to DraftKings' [s]econd [s]et of ROGs," specifically interrogatories 17-22, which "properly seek the factual bases for Plaintiff's claims" and his claimed damages. See ECF No. 82 at 3. Plaintiff opposes responding to interrogatories 17, 19, and 22 because they are contention interrogatories. See ECF No. 86 at 3 (citation omitted). The Court rejects this opposition because contention interrogatories are explicitly permitted by Federal Rule of Civil Procedure 33(a)(2) and are appropriate at this juncture, when fact discovery is nearly closed. Plaintiff opposes responding to interrogatory 20 because he" is not yet able to clarify the precise method of calculating damages prior to expert discovery." Id. at 3-4 (citations omitted). The Court rejects this opposition for the same reason discussed, supra, Sec. II(B)(1). Plaintiff does not oppose responding to interrogatories 18 and 21. Plaintiff therefore must serve responses to the aforementioned interrogatories by May 29, 2026.

### 3. Requests for Admission

Defendant argues that Plaintiff's response to requests for admission 10-13, 15, 18 and 25 "are evasive, unsupported, and rely on boilerplate objections instead of providing straightforward factual admissions," such that Plaintiff "refuses to admit or deny" whether "he continued to place wagers on DraftKings after the alleged 'threat'" (10-13, 15, 18), whether "he relied on any written statements asserting that DraftKings owed him any fiduciary duties" (14), whether "any DraftKings employee held power of attorney over his account" (12), and whether "his claimed damages under GBL § 349 overlap with those in other counts" (25).

Plaintiff responds that request 10 "regarding 'Terms of Use' is vague and calls for legal interpretation of contract terms." ECF No. 86 at 3. The Court rejects Plaintiff's argument, as the request does not ask Plaintiff to interpret the "Terms of Use" but rather asks Plaintiff to "[a]dmit that DraftKings informed You its relationship with You was governed by the Terms of Use." Id. at 11. Plaintiff must respond to the request by May 29, 2026.

Plaintiff responds that request 11 "asking about wagering after the alleged 'Threat' is argumentative and improperly juxtaposes events to imply a legal conclusion of waiver." Id. at 3. The Court rejects Plaintiff's argument, as the request, which asks Plaintiff to "[a]dmit that You continued to place Wagers on Your Account after the Threat," id. at 12, is unrelated to "a legal conclusion of waiver" and only asks whether Plaintiff wagered following the alleged threat, which is factual information. Plaintiff must respond to the request by May 29, 2026.

Plaintiff responds that requests 12 and 13 "address 'power of attorney' and 'discretionary authority,'" which "require Plaintiff to admit or deny legal terms of art that require legal analysis." Id. at 3. The Court rejects Plaintiff's argument as to request 12, which asks Plaintiff to "[a]dmit that no DraftKings employee ever held Your power of attorney," as such request solicits clearly defined, factual information, but accepts Plaintiff's argument as to request 13, which asks plaintiff to "[a]dmit that no DraftKings employee ever held discretionary authority over Your finances," as the terms in such request are sufficiently ambiguous so as to render a response thereto impractical. Id. at 13. Plaintiff must respond to request 12 by May 29 2026, and need not respond to request 13.

Plaintiff does not oppose responding to request 14. Plaintiff must respond to the request by May 29, 2026.

Plaintiff responds that request 15 "is compound and creates a false premise through its use of the world 'only.'" Id. at 3. Plaintiff need not respond to this request, which asks him to "[a]dmit that DraftKings told You only that Your tickets to the April 1, 2023 Yankees Giants VIP event were cancelled due to a threat of rain." Id. at 14. Given the placement of the word "only," if Plaintiff were to admit this statement, he would be admitting that this is the only statement ever made to him by Defendant, which is plainly untrue based on the record before the Court.

Plaintiff responds that request 18 "is impermissibly compound, bundling three separate propositions about 'voluntarily' placing wagers 'without any guarantee." Id. at 3. The Court agrees with Plaintiff that this is not an appropriate request to admit. Plaintiff need not respond to this request, which asks that he "[a]dmit that[,] after March 13, 2023[,] You voluntarily placed Wagers on Your Account without any guarantee of receiving VIP perks," id. at 16, as a denial could be based on any or all of the following three components: the date limitation, the voluntariness of the wagers, and the lack of guarantee as to "VIP perks."

Plaintiff does not oppose responding to request 25. Plaintiff must respond to the request by May 29, 2026.

### C. To Compel Responses To Defendant's Third Set Of Discovery Requests (ECF No. 88)[6]

Defendant raises that Plaintiff has failed to produce any documents in response to its requests 78-79 and 87, which seek communications about a settlement with Oscar Jones and Spanky, two individuals with whom Plaintiff alleges Defendant conspired, and the settlement

---

[6] The Court rejects Plaintiff's argument that Defendant's second set of discovery requests were untimely because they were not served by the deadline to serve initial document requests and interrogatories. See ECF No. 88 at 2; ECF No. 91 at 2-3.

agreement itself.  ECF No. 88 at 3.  Plaintiff has not opposed this request.  Plaintiff must produce non-privileged documents responsive to these requests by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Defendant contends that Plaintiff has failed to produce any documents in response to its requests 81-85, which seek information as to Plaintiff's employment history, earnings, and finances.  ECF No. 88 at 3.  Plaintiff counters that the employment-related documents sought are for the purpose of harassment and that the financial information, including "all assets" and "all debts," sought is overly broad and invasive.  ECF No. 91 at 3.  Both the employment-related information and the financial information, the requests for which are not as broad as Plaintiff claims, are relevant and discoverable as relating to Plaintiff's liability and damages claims. Plaintiff must produce non-privileged documents responsive to these requests by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Defendant contends that Plaintiff has failed to produce any documents in response to requests 80 and 86, which seek communications among Plaintiff, Oscar Jones and Spanky, as well as communications with Plaintiff's mother about the "Bronson" settlement.  ECF No. 88 at 3-4.  Plaintiff counters that the "Bronson" settlement occurred more than ten years ago and is unrelated to this action.  ECF No. 91 at 2-3.  As to the request regarding Oscar Jones, Plaintiff appears to misconstrue it as a request to Michael Jones, ECF No. 91 at 3, who, based on the context of other filings, the Court believes is an attorney at Plaintiff's former law firm, such that the request is effectively unopposed.  Plaintiff must produce non-privileged documents responsive to the requests concerning communications among Plaintiff, Oscar Jones and Spanky by May 22, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a

compliant privilege log.  Defendant has not offered the relevance of the "Bronson" settlement, other than informing the Court that the confidentiality provision contained therein lists Spanky as a permitted recipient of information.  ECF No. 88 at 4.  As such, the relevance of these documents has not been established, such that the Court will not compel their production.

Defendant contends that Plaintiff has failed to produce any documents in response to request 88, which seeks reports made to the New York Gaming Commission by Plaintiff about Defendant's purportedly nefarious conduct.  ECF No. 88 at 4.  Plaintiff counters that, to the extent such documents exist and are non-privileged, they are publicly available.  ECF No. 91 at 4.  This purported objection is not a basis upon which to refrain from producing responsive documents.  Plaintiff must produce non-privileged documents responsive to the requests by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Defendant contends that Plaintiff has failed to produce any documents in response to requests 89-90, which seek "bar records, character and fitness materials, and communications with licensing authorities."  ECF No. 88 at 4.  Plaintiff counters that his character and fitness materials are "highly confidential" and have only "marginal relevance."  ECF No. 91 at 3.  The Court concurs with Plaintiff that, at least as to non-public bar records, character and fitness materials, and communications with licensing authorities, the confidential nature of the materials outweighs the need for their production at this juncture.  Nonetheless, to the extent that any such materials are publicly available, Plaintiff must produce non-privileged documents responsive to the requests by May 29, 2026.  For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant privilege log.

Defendant contends that Plaintiff has failed to produce any documents in response to requests 91-92, which seek documents relating to a litigation against Oscar Jones and relating to a purported FBI investigation into Oscar Jones. ECF No. 88 at 4. Plaintiff does not oppose the request as to the documents relating to the litigation against Oscar Jones. As to the FBI investigation, Plaintiff counters that, to the extent the requested documents exist and are not publicly available, Defendant can subpoena them with the same ease as Plaintiff. ECG No. 91 at 4. This purported objection is not a basis upon which to refrain from producing responsive documents. Plaintiff must produce non-privileged documents responsive to the requests by May 29, 2026. For any discovery withheld on the basis of privilege, Plaintiff must produce a compliant, updated privilege log.

The compliant privilege log must be served by May 29, 2026.

**III.  SCHEDULE**

The parties are to complete all fact discovery, including depositions, by July 10, 2026, by which date the parties must file a joint letter certifying the close of fact discovery.[7]  The July 10, 2026, letter must inform the Court of whether either party intends to move for summary judgment on liability in accordance with the Individual Rules of the District Judge, which would need to commence by August 7, 2026; if a party seeks to make a summary judgment motion at this stage, expert discovery would be stayed.  If expert discovery is relevant to the summary judgment motion, the parties may propose an expert discovery schedule that would conclude no more than 120 days after the conclusion of fact discovery.

Dated: Brooklyn, New York
        May 13, 2026

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge

---

[7] Plaintiff notes that he anticipates potential motion practice as to a subpoena duces tecum and a subpoena ad testificandum.  See ECF No. 110 at 3-4 (SEALED).  To the extent that such motion practice materializes, Plaintiff is expected to file it sufficiently in advance of the close of fact discovery, and no later than May 29, 2026, to enable resolution of any related issues.  Plaintiff also notes that a subpoenaed deposition is in the process of being rescheduled, see id. (SEALED) at 4, which must be completed within the aforementioned period.